SHERRIE RUSSELL-BROWN,

    Plaintiff,

                                  CASE NO. 1:09-cv-00257-MP-AK

    v.

THE UNIVERSITY OF FLORIDA,
BOARD OF TRUSTEES,
THE UNIVERSITY OF FLORIDA,
LEVIN COLLEGE OF LAW, and
ROBERT H. JERRY, II, in his
individual and official capacities as
Dean of the University of Florida,
Levin College of Law,

    Defendants.

_____/

## NOTICE

To:   **The University of Florida, Board of Trustees, the University of Florida, Levin College of Law, Robert H. Jerry, Esq., Ian S. Marx, Esq. and Richard C. McCrea, Esq.**

**PLEASE TAKE NOTICE:**

1.     The attached Answer, Affirmative Defenses and Counterclaim ("Answer and Counterclaim") (Doc. 51) and Amended Answer, Affirmative Defenses and Counterclaim ("Amended Answer and Counterclaim") (Doc. 54) to Plaintiff's Verified Complaint (Doc. 45), served, respectively, on April 26 and April 27, 2010, are not verified, personally, by the Defendants.

2.     When one pleading is verified, every subsequent pleading must also be verified, unless verification is excused.

3.     Filing an unverified pleading in such a situation has the same effect as filing no pleading at all. The lack of verifications makes the Answer and Counterclaim (Doc. 51) and Amended Answer and Counterclaim (Doc. 54) ineffective for all purposes.

4.      Plaintiff elects, therefore, to treat the attached unverified purported Answer and Counterclaim (Doc. 51) and Amended Answer and Counterclaim (Doc. 54) as nullities, and the same are being returned to the Defendants with this Notice.

Dated: April 28, 2010                        Respectfully submitted,

                                             /s/ Lennox S. Hinds
                                             Lennox S. Hinds
                                             New York Bar No. 8196
                                             Stevens, Hinds & White, PC
                                             116 West 111th Street
                                             New York, NY 10026-4206
                                             (212) 864-4445
                                             (212) 222-2680 (fax)
                                             lawfirmshw@yahoo.com
                                             Attorney for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 28, 2010, the foregoing has been served by U.S. Mail and filed with the Clerk of the Court and served electronically by using the CM/ECF system, upon the following:

Ian S. Marx, Esq.
Greenberg Taurig, LLP
200 Park Avenue
Florham Park, NJ 07932

Richard C. McCrea, Jr., Esq.
Greenberg Taurig, LLP
Courthouse Plaza, Suite 100
625 East Twiggs Street
Tampa, FL 33602

Attorneys for Defendants

/s/ Lennox S. Hinds
Lennox S. Hinds
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

**SHERRIE RUSSELL-BROWN,**

    **Plaintiff,**

v.                        **CASE NO. 1:09-CV-00257-MP-AK**

**THE UNIVERSITY OF FLORIDA
BOARD OF TRUSTEES,
THE UNIVERSITY OF FLORIDA,
LEVIN COLLEGE OF LAW, and
ROBERT H. JERRY, II, in his individual
and official capacities as Dean of the
University of Florida, Levin College of Law,**

    **Defendants.**

_____/

## ANSWER, AFFIRMATIVE DEFENSES
## AND COUNTERCLAIM

Defendants hereby respond to the correspondingly-numbered paragraphs of Plaintiff Sherrie Russell-Brown's Verified Complaint as follows:

1.     Defendants aver that they have not engaged in any unlawful employment practice, including but not limited to unlawful discrimination, harassment, retaliation or violation of the Family and Medical Leave Act, and therefore admit only that Plaintiff purports to bring this action pursuant to 42 USC §1981, 42 USC §2000e *et seq.*, 20 USC §1681 *et seq.*, 42 USC § 2000d *et seq.*, 29 USC § 2601 *et seq.* and 42 USC §1983. Liability and any entitlement to relief is specifically denied.

2.     Defendants aver that they have not breached any contract, defamed Plaintiff, or intentionally inflicted emotional distress upon Plaintiff, and therefore admit only that Plaintiff purports to assert such claims. Liability and any entitlement to relief is specifically denied.

3.     Admitted for subject matter jurisdictional purposes only. Liability and any entitlement to relief is specifically denied.

4.     Admitted for subject matter jurisdictional purposes only.    Liability and any entitlement to relief is specifically denied.

5.     Denied.

6.     Admitted Plaintiff is and was an African American female, to defendants' knowledge and belief, residing in Plainfield, New Jersey and not in Gainesville, Florida.

7.     Admitted.

8.     Denied that The University of Florida, Levin College of Law ("the Law School") is a separate employer.    The remaining allegations of Paragraph 9 of the Verified Complaint are admitted.

9.     Admitted.

10.     Denied that investigation revealed facts establishing reasonable cause to believe any statute has been violated or that Plaintiff has fulfilled all conditions precedent to instituting this action. The remaining allegations of Paragraph 10 of the Verified Complaint are admitted.

11.     Denied.

12.     Defendants aver that the referenced letter speaks for itself.    The remaining allegations of this paragraph are denied.

13.     Defendants aver that the referenced e-mail speaks for itself.    The remaining allegations of this paragraph are denied.

14.     Denied.

15.     An October 30, 2000 news report in the New York Times discussed "accusations of racism" and "an unusually public debate about the role diversity in legal education" at the College. An April 26, 2001 news report in the New York Times discussed the report of a consultant retained by the Law School to assist the Law School. The news report stated that the consultant's report praised law school faculty for making improvements in race relations over the past few months. An

October 26, 2000 news report in Black Issues in Higher Education reported that the Law School had taken steps to hire a race relations consultant to help the school with retention of faculty of color. These news reports speak for themselves. Moreover, such publications are wholly irrelevant to any employment decision regarding Plaintiff. Thus, the allegations of Paragraph 15 of the Verified Complaint are denied.

16.     Defendants aver that Plaintiff is the source of Defendants' information and belief that the allegations of this paragraph are true, but Defendants lack independent knowledge and, therefore, the allegations are denied.

17.     Admitted.

18.     Plaintiff's overall record of teaching, scholarship, and service during her employment at the Law School was unsatisfactory and therefore the allegations of Paragraph 18 of the Verified Complaint are denied.

19.     Defendants admit that plaintiff was nominated for "Professor of the Year." Defendants further assert that to be nominated for "Professor of the Year," at least one student in the Law School must suggest that a particular professor receive the Professor of the Year award for the year in question. The Law School had approximately 1300 students during each of the years in question, and defendants are without knowledge as to whether one student or what number of students may have nominated her in each of those years. Any suggestion that Plaintiff received an award for teaching is specifically denied.

20.     Denied as the evaluation in question speaks for itself. The characterization of the evaluation as "excellent" is specifically denied. The accuracy of the quotations is admitted.

21.     Denied as the evaluation in question speaks for itself. The accuracy of the quotation is admitted.

22.     Denied as the evaluation in question speaks for itself.

23.     Denied as the evaluation in question speaks for itself. The accuracy of the quotation is admitted.

24.     Denied as the evaluation in question speaks for itself. The accuracy of the quotations is admitted.

25.     Denied as the evaluation in question speaks for itself. The accuracy of the quotations is admitted.

26.     The accuracy of the quotation is admitted. Otherwise denied, as the evaluation in question speaks for itself.

27.     Defendants aver that some of Plaintiff's colleagues questioned the depth of her scholarship. Admitted she was promoted. The accuracy of the quotation is admitted. The letter informing Plaintiff of promotion otherwise speaks for itself. The remaining allegations of Paragraph 27 of the Verified Complaint are denied.

28.     Denied as the email dated June 1, 2004 speaks for itself. The accuracy of the quotation is admitted. The allegations of Paragraph 28 are otherwise denied.

29.     Defendants aver that the form letter dated August 19, 2004 speaks for itself. Defendants deny that Plaintiff was selected to receive a merit raise in recognition of exceptional performance in the areas of teaching, research and service.

30.     Defendants aver that Plaintiff is the source of Defendants' information and belief that the allegations of this paragraph are true, but Defendants lack independent knowledge and, therefore, the allegations are denied.

31.     Admitted.

32.     Defendants admit that the Law School's regulations applied to plaintiff's employment. Otherwise denied.

33.    Defendants aver that the Law School's regulations speak for themselves. Otherwise denied.

34.    Defendants aver that the Law School's regulations speak for themselves. Otherwise denied.

35.    Defendants aver that the Law School's regulations speak for themselves. Otherwise denied.

36.    Defendants aver that the Law School's regulations speak for themselves. Otherwise denied.

37.    Defendants aver that the Law School's regulations speak for themselves. Otherwise denied.

38.    Defendants aver that the Law School's regulations speak for themselves. Otherwise denied.

39.    Defendants admit that Plaintiff pursued a D. Phil. degree at Oxford during her employment, and further deny that Plaintiff performed her employment as a professor of the Law School at the same time, averring that Plaintiff's pursuit of a degree at Oxford, in the manner she pursued it, materially detracted from her performance of her duties as a faculty member at the Law School.

40.    Defendants aver that Plaintiff's request in the spring of 2004 for a one-year leave beginning in the fall 2004 semester to pursue a D. Phil. was not submitted in a timely manner. Plaintiff did not inform the Law School of a two-year residency requirement, and instead requested and was granted only a one-year leave of absence from the Law School. This leave was granted after Plaintiff threatened to resign if the leave were not granted. Plaintiff was instructed not to submit a late request for leave again. Plaintiff's request in the spring of 2005 for another one-year leave of absence beginning in the fall 2005 semester was not submitted in a timely manner. This leave

request was denied. After further discussions, the Law School did agree to allow Plaintiff a leave of absence for the 2006 calendar year, but insisted that Plaintiff teach in the fall 2005 semester as scheduled. Plaintiff agreed to return for the fall 2005 semester and to teach and perform her other assigned duties. Approximately one week before the start of the fall 2005 semester, Plaintiff announced that she would not return for the fall 2005 semester and produced documents purporting to show the need for a medical leave of absence shortly before her classes were to begin and significantly affecting the scheduling of classes. Plaintiff declined to undergo a medical exam in Gainesville, Florida, which was her place of employment. Plaintiff asked the secretarial staff to forward her mail to an address in Oxford. After her paid sick leave was exhausted, Plaintiff obtained a purported medical certification of her ability to work beginning on November 10, 2005. Plaintiff returned to Gainesville and performed various tasks for the few weeks remaining that semester. Thus, the allegations of Paragraph 40 of the Verified Complaint are denied.

41. Defendants aver that the University's regulations speak for themselves. Without derogating from this, University regulations count leaves of absence for the purposes of the "tenure clock" where the primary purpose of the leave is to conduct research, and further aver that, on information and belief, all or some of Plaintiff's leave of absence was for that purpose. Plaintiff inquired about the impact of her leaves on the tenure clock via e-mails in May and June 2005. On July 1, 2005, defendant Jerry sent Plaintiff an e-mail which stated: "Exactly what happens with the tenure clock is something we will need to work out at the time of your leave request, and the result will depend on what you are doing in Oxford with your leave without pay." Thus, the allegations of Paragraph 41 of the Verified Complaint are denied.

42.     Denied that Plaintiff published the referenced report, Defendants aver that, on information and belief, the article was published by an arm of the AFL-CIO called the American Center for International Labor Solidarity, which lists Plaintiff as an independent consultant in connection with the work. Any suggestion that the referenced report was published by the Woodrow Wilson International Center is denied. Defendants further deny any implication that such publication in a non-peer reviewed journal would meet scholarship requirements for tenure purposes. Defendants further aver that, on information and belief, Plaintiff has never met the requirements to obtain a D. Phil. from Oxford, to include producing a thesis. Defendants are without knowledge as to the remaining allegations of this Paragraph and, therefore, they are denied.

43.     Admitted that Plaintiff had email communications with faculty members of the University of Florida and the Law School. The contents of these communications speak for themselves and, therefore, the remaining allegations of Pragraph 43 of the Verified Complaint are denied.

44.     Denied that Associate Dean Patrick Shannon made any such statement regarding a Dean of the Law School, and instead defendants aver that he opined that consideration of the race of a prospective dean would be improper. Because Plaintiff's email speaks for itself, the remaining allegations of this paragraph are denied.

45.     Defendants admit that Associate Dean Dawson called Oxford to determine whether plaintiff was in attendance there. Otherwise denied.

46.     Defendants deny the allegations of Paragraph 46 of the Verified Complaint.

47.     Admitted Plaintiff returned to Gainesville in January 2007. Otherwise denied.

48.     Defendants deny the allegations of Paragraph 48 of the Verified Complaint.

49.     Defendants deny the allegations of Paragraph 49 of the Verified Complaint.

50.     Defendants aver that Plaintiff's office was in the same condition or substantially similar condition in which she left it and further aver that, at her request, the Law School had procured appropriate office furniture for her use. The remaining allegations of Paragraph 50 of the Verified Complaint are denied.

51.     Defendants aver that they do not generally monitor or control faculty members' housekeeping within their offices.   Defendants otherwise deny the allegations of Paragraph 51 of the Verified Complaint.

52.     Defendants aver that plaintiff expressly directed her secretary to look through her mail for a document that plaintiff needed while she was overseas and that no other personal mail belonging to the plaintiff was opened. Otherwise denied.

53.     Defendants deny the allegations of Paragraph 53 of the Verified Complaint.

54.     Defendants deny the allegations of Paragraph 54 of the Verified Complaint.

55.     Defendants admit that plaintiff complained to Associate Dean Dawson about the condition of her office and the opening of her mail. Otherwise denied.

56.     Defendants aver that, to the extent certain of Plaintiffs' colleagues chose to limit their interactions with her, such choice was the result of Plaintiffs' personal interactions with those colleagues. At no time were faculty or anyone else instructed or encouraged to shun Plaintiff. Thus, the allegations of Paragraph 56 of the Verified Complaint are denied.

57.     Defendants deny the allegations of Paragraph 57 of the Verified Complaint.

58.     Defendants aver that an African-American colleague of Plaintiff may have accidentally brushed against her during the change from one class to another. An investigation by the Law School administration of this alleged incident at the time it was first alleged found no fact or circumstance supporting Plaintiff's allegation, and the Law School administration concluded that her allegation was false. Plaintiff also complained that a different faculty colleague of color turned her

back on her at the time of this incident, but the faculty colleague had not met her at the time of this alleged incident, did not know her, and would not have recognized her. Therefore, the allegations of Paragraph 58 of the Verified Complaint are denied.

59.     Defendants deny the allegations of Paragraph 59 of the Verified Complaint.

60.     Defendants aver that no action was taken against Plaintiff's colleague because the Law School administration concluded that Plaintiff's allegation was false. Defendants otherwise deny the allegations of Paragraph 60 of the Verified Complaint.

61.     Defendants deny the allegations of Paragraph 61 of the Verified Complaint. Further, Defendants deny any knowledge that any student acted aggressively towards Plaintiff and Defendants further aver that, if any student did act aggressively, he did so without authorization or knowledge of, and was not condoned by, Defendants.

62.     Defendants deny any knowledge of allegations of Paragraph 62 of the Verified Complaint and further aver that, if any student acted aggressively, he did so without any authorization or knowledge, and was not condoned, by Defendants. Defendants further aver that, if any student sent a threatening e-mail to Plaintiff, he did so without authorization or knowledge of, and was not condoned by, Defendants.

63.     Defendants deny the allegations of Paragraph 63 of the Verified Complaint.

64.     Defendants aver that the quality of Plaintiff's teaching in the spring 2007 Torts class was unsatisfactory and failed to meet minimum performance expectations for faculty at the Law School. On April 18, 2007, Plaintiff sent an e-mail to the students in her class in which she criticized the class for its inability to control their emotions and behavior. In this e-mail, Plaintiff abruptly announced that she was cancelling all remaining classes. This cancellation had the effect of preventing students from having the opportunity to complete student evaluations as required by University regulations. The Law School provided those students the opportunity to complete

student evaluations as required by University regulations. The Law School provided those students the opportunity to complete student evaluations in a regularly scheduled review session. Defendants admit that Dean Inman received criticisms of Plaintiff's teaching from students in Plaintiff's Spring 2007 Torts class, but deny that these criticisms were solicited. Otherwise denied.

65.     Defendants admit that, on April 19, 2007, Plaintiff sent e-mails to the Provost, which speak for themselves. Otherwise denied.

66.     Denied.

67.     Defendants aver that Plaintiff failed to follow the requirements of administering the SUSSAI by abruptly cancelling class without providing students the opportunity to complete their evaluations. The allegations of Paragraph 67 are otherwise denied.

68.     Defendants aver that the policy speaks for itself. Defendants re-aver their response to Paragraph 67 of the Verified Complaint, and further aver that any shortcomings with the administration of the SUSSAI were caused by Plaintiff. The remaining allegations of Paragraph 68 of the Verified Complaint are denied.

69.     Defendants re-aver their response to Paragraph 67 of the Verified Complaint, and further aver that any shortcomings with the administration of the SUSSAI were caused by Plaintiff. The remaining allegations of Paragraph 69 are denied.

70.     The allegations of Paragraph 70 are denied.

71.     Defendants aver that on Friday, August 17, 2007, before classes were scheduled to begin on Monday, August 20, 2007, Plaintiff contacted defendant Jerry from New Jersey claiming the need for a medical leave of absence for an unknown and unspecified period of time due to an unspecified heart condition. Defendants further aver that, due to Plaintiff's past history of claiming she was medically precluded from teaching, because of the unknown length of any medical leave, because classes started on August 20, 2007, and because Plaintiff failed to respond to the Law

School's questions asked in e-mail and by attempted telephone communications during the period from August 17, 2007 to August 21, 2007, about when she expected she would be able to come to Gainesville to teach her classes and whether or not she would be able to assume her teaching responsibilities that semester, the Law School prudently took necessary steps to protect its students by reassigning her class to another faculty member so that the Law School could fulfill its obligation to provide an instructor for the students in her class. Thus, the allegations of Paragraph 71 are denied.

72.     Admitted defendant Jerry left a message for Plaintiff regarding her assignment. The allegations of Paragraph 72 are otherwise denied.

73.     Defendants deny the allegations of Paragraph 73 of the Verified Complaint.

74.     Defendants aver that the August 24, 2007 e-mail speaks for itself. Otherwise denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Defendants deny the allegations of Paragraph 79 of the Verified Complaint.

80.     Defendants aver that, on August 21, 2007, defendant Jerry e-mailed Plaintiff at 1:47 p.m., telling her that her failure to communicate with the Law School by 9:00 a.m. that morning despite repeated requests that she do so, and her failure to respond to multiple messages that she call the Dean "immediately" on that date, so that the Law School could determine whether (and if so, when) she would be in Gainesville to teach her Torts class, had resulted in her class being reassigned to another faculty member in order to ensure that the class would start at the beginning of the term and meet on a regular basis. The e-mail also advised Plaintiff that she needed to schedule as soon as possible a time to discuss what her fall assignment would be at the Law School. Plaintiff replied to

this e-mail at 5:29 p.m. on August 21, 2007, and stated that she did not understand why her class had been reassigned. Plaintiff took no steps to schedule a meeting with the Dean as instructed. In an e-mail on August 23, 2007, at 12:12 p.m., defendant Jerry told Plaintiff that because she had not scheduled a meeting with him as instructed, he had scheduled an appointment for her to see him in his office on Monday, August 27, at 1:00 p.m. This e-mail also informed Plaintiff that her sick leave would expire on Monday, August 27th if used continuously after August 16th. In an e-mail sent by Plaintiff to defendant Jerry on August 23, 2007 at 3:06 p.m., plaintiff advised him that she had contacted the Office of the President for the purpose of starting a grievance against defendant Jerry, as well as formal complaints of harassment and sex discrimination with the Office of Equal Employment Opportunity. On August 24, 2007, Plaintiff telephoned the defendant Jerry's assistant to tell her that she was unavailable to meet on August 27, 2007. Defendant Jerry's assistant rescheduled the meeting for Thursday, September 6th. Defendant Jerry sent an e-mail to Plaintiff on August 24, 2007, at 3:01 p.m. confirming the September 6th appointment, advising her that it was the Law School's understanding that she was not well enough to work, advising her that she would be kept in a paid sick leave status until her sick leave was exhausted, requesting that she provide medical certification documenting her current illness, and requesting that if she intended to resume work that she provide medical documentation that she was well enough to return to work. Because defendant Jerry was unwilling to meet privately with a faculty member who had announced an intention to grieve against him, his e-mail conveyed his understanding that Plaintiff intended to have a member of the university EEO office sit in as an observer at the September 6th meeting. Although Plaintiff refused to meet with defendant Jerry to discuss her work assignment, Plaintiff demanded that someone e-mail her details of her reassignment. Defendants deny the remaining allegations of Paragraph 80 of the Verified Complaint.

81.     Defendants admit that plaintiff expressed an intent to file a complaint of harassment and discrimination with the EEO Office against defendant Jerry and that plaintiff requested that a member of the EEO office accompany her to a meeting with defendant Jerry. Otherwise denied.

82.     Defendant Jerry's August 24, 2007 e-mail speaks for itself. Otherwise denied.

83.     Admitted that plaintiff sent an e-mail to the listed individuals on August 25, 2007, which speaks for itself. Otherwise denied.

84.     Defendants are without knowledge as to the content of the communication to which Plaintiff refers and, therefore, deny the allegations of Paragraph 84 of the Verified Complaint.

85.     Defendants admit that, on August 31, 2007, plaintiff filed an internal discrimination, retaliation and harassment complaint against defendant Jerry and Associate Dean Dawson, which was investigated and found to be unsubstantiated. Otherwise denied.

86.     Defendants are without knowledge as to Plaintiff's contact with the EEOC and, therefore, deny the allegations of Paragraph 85 of the Verified Complaint.

87.     Defendants re-aver the contents of Paragraph 80. In an e-mail sent by Plaintiff to the defendant Jerry on August 24th, 2007, at 4:56 p.m., Plaintiff disputed the sick leave calculation communicated in defendant Jerry's August 23, 2007 e-mail, claiming that because she informed the Law School that she was sick on August 17th, August 16th should not be counted as a sick day, and that her last day of sick leave would expire on August 29th. In an e-mail sent by defendant Jerry to Plaintiff on August 24, 2007 at 5:49 p.m., he explained that because Plaintiff had sent an e-mail to the College on August 17th stating that she had been in contact with her physicians on August 16th, the Law School had assumed that she was sick on August 16th. The e-mail also said that "We will, however, follow up with HR to make sure that the sick leave calculation is done properly." The Law School decided to give Plaintiff two extra days of sick leave. By August 29, 2007, Plaintiff had

exhausted all accrued leave and had not returned to work. She was therefore placed on a leave without pay status. The remaining allegations of Paragraph 86 are denied.

87.     Defendants re-aver the contents of Paragraph 86. The allegations of Paragraph 87 are otherwise denied.

88.     The allegations of Paragraph 88 are denied.

89.     The allegations of Paragraph 89 are denied.

90.     The allegations of Paragraph 90 are denied.

91.     The allegations of Paragraph 91 are denied.

92.     The University's regulations speak for themselves. Defendants otherwise deny the allegations of Paragraph 92 of the Verified Complaint.

93.     The University's regulations speak for themselves. The allegations of Paragraph 93 are otherwise denied.

94.     Defendants deny that Plaintiff was entitled to notice of nonrenewal and further aver that Plaintiff voluntarily resigned her employment prior to any nonrenewal. The remaining allegations of Paragraph 94 are denied.

95.     The University's regulations speak for themselves. Defendants otherwise deny the allegations of Paragraph 95 of the Verified Complaint.

96.     Defendants deny the allegations of Paragraph 96 of the Verified Complaint.

97.     Defendants deny the allegations of Paragraph 97 of the Verified Complaint.

98.     Defendants are without knowledge and, therefore, deny the allegations of Paragraph 98 of the Verified Complaint.

99.     Defendants admit that, by letter to the Law School's President Machen dated September 13, 2007, plaintiff requested the commencement of a Step I Grievance Review. Defendants further aver that plaintiff's request for a Step I Grievance Review speaks for itself. Otherwise denied.

100.    Defendants aver that plaintiff transmitted additional correspondence to the Law School's President Machen dated September 17, 2007 and October 2, 2007, which correspondence speaks for itself. Otherwise denied.

101.    Admitted that, because Plaintiff had exhausted all accrued leave and because she still had not returned to Gainesville, she was placed on a leave without pay status. The remaining allegations of Paragraph 101 are denied.

102.    Denied that a final Spring 2008 schedule was completed reflecting Plaintiff being assigned two courses.

103.    Defendants deny the allegations of Paragraph 103 of the Verified Complaint.

104.    Defendants deny the allegations of Paragraph 104 of the Verified Complaint.

105.    The General Release speaks for itself. Defendants otherwise deny the allegations of Paragraph 105 of the Verified Complaint.

106.    Defendants deny the allegations of Paragraph 106 of the Verified Complaint.

107.    Defendants deny the allegations of Paragraph 107 of the Verified Complaint.

108.    The General Release speaks for itself. Defendants otherwise deny the allegations of Paragraph 108 of the Verified Complaint.

109.    The General Release speaks for itself. Defendants otherwise deny the allegations of Paragraph 109 of the Verified Complaint.

110.    The General Release speaks for itself. Defendants otherwise deny the allegations of Paragraph 110 of the Verified Complaint.

111.    Approximately one week before the start of the fall 2005 semester, Plaintiff announced that she would not return for the fall 2005 semester and produced documents purporting to show the need for a medical leave of absence shortly before her classes were to begin. Although claiming to be too ill to work, Plaintiff had asked the College's secretarial staff to forward her mail to an address in Oxford. Dean Dawson called Oxford University to find out whether Plaintiff could interrupt her academic program there for a full year without consequence so that she could return to Gainesville to teach. Defendants otherwise deny the allegations of Paragraph 111 of the Verified Complaint.

112.    Defendants deny the allegations of Paragraph 112 of the Verified Complaint.

113.    Defendant deny that Plaintiff was "blocked" from pursuing other employment opportunities. Plaintiff's email speaks for itself. The remaining allegations of Paragraph 113 are denied.

114.    Defendants admit that Plaintiff has made a public records request. The allegations of this Paragraph are otherwise denied.

115.    Defendants deny the allegations of Paragraph 115 of the Verified Complaint.

116.    Defendants deny the allegations of Paragraph 116 of the Verified Complaint.

117.    Defendants deny the allegations of Paragraph 117 of the Verified Complaint.

118.    Defendants are without knowledge as to the allegations of Paragraph 118 of the Verified Complaint and, therefore, they are denied.

119.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through 118.

120.    Defendants deny the allegations of Paragraph 120 of the Verified Complaint.

121.    Defendants deny the allegations of Paragraph 121 of the Verified Complaint.

122.    Defendants deny the allegations of Paragraph 122 of the Verified Complaint.

123.   Defendants deny the allegations of Paragraph 123 of the Verified Complaint.

124.   Defendants deny the allegations of Paragraph 124 of the Verified Complaint.

125.   Defendants deny the allegations of Paragraph 125 of the Verified Complaint.

126.   Defendants re-aver and re-allege each and every response to Paragraphs 1 through

125.

127.   Defendants deny the allegations of Paragraph 127 of the Verified Complaint.

128.   Defendants deny the allegations of Paragraph 128 of the Verified Complaint.

129.   Defendants deny the allegations of Paragraph 129 of the Verified Complaint.

130.   Defendants deny the allegations of Paragraph 130 of the Verified Complaint.

131.   Defendants re-aver and re-allege each and every response to Paragraphs 1 through

130.

132.   Defendants deny the allegations of Paragraph 132 of the Verified Complaint.

133.   Defendants deny the allegations of Paragraph 133 of the Verified Complaint.

134.   Defendants deny the allegations of Paragraph 134 of the Verified Complaint.

135.   Defendants deny the allegations of Paragraph 135 of the Verified Complaint.

136.   Defendants deny the allegations of Paragraph 136 of the Verified Complaint.

137.   Defendants re-aver and re-allege each and every response to Paragraphs 1 through

136.

138.   Defendants deny the allegations of Paragraph 138 of the Verified Complaint.

139.   Defendants deny the allegations of Paragraph 139 of the Verified Complaint.

140.   Defendants deny the allegations of Paragraph 140 of the Verified Complaint.

141.   Defendants deny the allegations of Paragraph 141 of the Verified Complaint.

142.   Defendants re-aver and re-allege each and every response to Paragraphs 1 through

141.

143.  Defendants deny the allegations of Paragraph 143 of the Verified Complaint.

144.  Defendants deny the allegations of Paragraph 144 of the Verified Complaint.

145.  Defendants deny the allegations of Paragraph 145 of the Verified Complaint.

146.  Defendants deny the allegations of Paragraph 146 of the Verified Complaint.

147.  Defendants deny the allegations of Paragraph 147 of the Verified Complaint.

148.  Defendants re-aver and re-allege each and every response to Paragraphs 1 through 147.

149.  Defendants deny the allegations of Paragraph 149 of the Verified Complaint.

150.  Defendants deny the allegations of Paragraph 150 of the Verified Complaint.

151.  Defendants deny the allegations of Paragraph 151 of the Verified Complaint.

152.  Defendants deny the allegations of Paragraph 152 of the Verified Complaint.

153.  Defendants re-aver and re-allege each and every response to Paragraphs 1 through 152.

154.  Defendants deny the allegations of Paragraph 154 of the Verified Complaint.

155.  Defendants deny the allegations of Paragraph 155 of the Verified Complaint.

156.  Defendants deny the allegations of Paragraph 156 of the Verified Complaint.

157.  Defendants deny the allegations of Paragraph 157 of the Verified Complaint.

158.  Defendants re-aver and re-allege each and every response to Paragraphs 1 through 157.

159.  Defendants deny the allegations of Paragraph 159 of the Verified Complaint.

160.  Defendants deny the allegations of Paragraph 160 of the Verified Complaint.

161.  Defendants deny the allegations of Paragraph 161 of the Verified Complaint.

162.  Te Law School re-avers and re-alleges each and every response to Paragraphs 1 through 161.

163.   Defendants deny the allegations of Paragraph 163 of the Verified Complaint.

164.   Defendants deny the allegations of Paragraph 164 of the Verified Complaint.

165.   Defendants deny the allegations of Paragraph 165 of the Verified Complaint.

166.   Defendants deny the allegations of Paragraph 166 of the Verified Complaint.

167.   Defendants deny the allegations of Paragraph 167 of the Verified Complaint.

168.   Defendants deny the allegations of Paragraph 168 of the Verified Complaint.

169.   Defendants deny the allegations of Paragraph 169 of the Verified Complaint.

170.   Admitted.

171.   Defendants deny the allegations of Paragraph 171 of the Verified Complaint.

172.   Defendants deny the allegations of Paragraph 172 of the Verified Complaint.

173.   Defendants deny the allegations of Paragraph 173 of the Verified Complaint.

174.   Defendants re-aver and re-allege each and every response to Paragraphs 1 through

173.

175.   Admitted.

176.   Defendants deny the allegations of Paragraph 176 of the Verified Complaint.

177.   Defendants deny the allegations of Paragraph 177 of the Verified Complaint.

178.   Defendants deny the allegations of Paragraph 178 of the Verified Complaint.

179.   Defendants deny the allegations of Paragraph 179 of the Verified Complaint.

180.   Admitted that Defendants act under color of state law.  Defendants otherwise deny

the allegations of Paragraph 180 of the Verified Complaint.

181.   Defendants deny the allegations of Paragraph 181 of the Verified Complaint.

182.   Defendants deny the allegations of Paragraph 182 of the Verified Complaint.

183.   Defendants deny the allegations of Paragraph 183 of the Verified Complaint.

184.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

183.

185.    Defendants deny the allegations of Paragraph 185 of the Verified Complaint.

186.    Defendants deny the allegations of Paragraph 186 of the Verified Complaint.

187.    Admitted.

188.    Defendants deny the allegations of Paragraph 188 of the Verified Complaint.

189.    Defendants deny the allegations of Paragraph 189 of the Verified Complaint.

190.    Defendants deny the allegations of Paragraph 190 of the Verified Complaint.

191.    Defendants deny the allegations of Paragraph 191 of the Verified Complaint.

192.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

191.

193.    Defendants deny the allegations of Paragraph 193 of the Verified Complaint.

194.    Defendants deny the allegations of Paragraph 194 of the Verified Complaint.

195.    Defendants deny the allegations of Paragraph 195 of the Verified Complaint.

196.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

195.

197.    Admitted.

198.    Admitted.

199.    Admitted.

200.    Defendants deny the allegations of Paragraph 200 of the Verified Complaint.

201.    Defendants deny the allegations of Paragraph 201 of the Verified Complaint.

202.    Defendants deny the allegations of Paragraph 202 of the Verified Complaint.

203.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

202.

204.    Defendants deny the allegations of Paragraph 204 of the Verified Complaint.

205.    Defendants deny the allegations of Paragraph 205 of the Verified Complaint.

206.    Defendants deny the allegations of Paragraph 206 of the Verified Complaint.

207.    Defendants deny the allegations of Paragraph 207 of the Verified Complaint.

208.    Defendants deny the allegations of Paragraph 208 of the Verified Complaint.

209.    Defendants deny the allegations of Paragraph 209 of the Verified Complaint.

210.    Defendants deny the allegations of Paragraph 210 of the Verified Complaint.

211.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

210.

212.    Defendants deny the allegations of Paragraph 212 of the Verified Complaint.

213.    Defendants deny the allegations of Paragraph 213 of the Verified Complaint.

214.    Defendants deny the allegations of Paragraph 214 of the Verified Complaint.

215.    Defendants deny the allegations of Paragraph 215 of the Verified Complaint.

216.    Defendants deny the allegations of Paragraph 216 of the Verified Complaint.

217.    Defendants deny the allegations of Paragraph 217 of the Verified Complaint.

218.    Defendants deny the allegations of Paragraph 218 of the Verified Complaint.

219.    Defendants deny the allegations of Paragraph 219 of the Verified Complaint.

220.    Defendants deny the allegations of Paragraph 220 of the Verified Complaint.

All allegations not specifically addressed are hereby denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by accord and satisfaction.

### SECOND AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by estoppel.

### THIRD AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by payment.

### FOURTH AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by release.

### FIFTH AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by waiver.

### SIXTH AFFIRMATIVE DEFENSE

Further defending, to the extent plaintiff has failed to make a good faith, reasonable effort to mitigate her damages, she is not entitled to relief.

### SEVENTH AFFIRMATIVE DEFENSE

Further defending, defendants are entitled to a set-off for any amounts recovered by plaintiff through her efforts to mitigate damages.

### EIGHTH AFFIRMATIVE DEFENSE

Further defending, to the extent plaintiff has obtained recovery from any collateral source, defendants are entitled to a set-off.

### NINTH AFFIRMATIVE DEFENSE

Further defending with respect to Counts III and V, defendants are not subject to liability for any alleged acts of harassment because defendants exercised reasonable care to prevent and correctly promptly any such behavior, and plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by defendants to avoid harm otherwise.

### TENTH AFFIRMATIVE DEFENSE

Further defending, any adverse employment action with respect to plaintiff was taken for legitimate, non-discriminatory and non-retaliatory reasons and was predicated upon a ground other than plaintiff's protected status or exercise of a statutorily protected right.

## ELEVENTH AFFIRMATIVE DEFENSE

Further defending, even assuming *arguendo* that plaintiff were able to establish any unlawful employment action, the same action would have been taken in the absence of any impermissible motivating factor and, accordingly, plaintiff is not entitled to any relief.

## TWELFTH AFFIRMATIVE DEFENSE

Further defending, even assuming *arguendo* that plaintiff were able to establish a claim, plaintiff was not entitled to recover punitive damages because defendants made good faith efforts to comply with all applicable laws.

## THIRTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff's claims in Counts III and IV are not the subject of, or reasonably related to, allegations in a timely-filed and properly verified charge with the Equal Employment Opportunity Commission ("EEOC"), such claims are barred for failure to exhaust administrative remedies and failure to satisfy conditions precedent to suit.

## FOURTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff failed to timely file and properly verify a charge with the EEOC within three hundred days of any alleged act of discrimination, retaliation, or harassment, her claims in Counts III and IV are barred for failure to exhaust administrative remedies and failure to satisfy conditions precedent to suit.

## FIFTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent plaintiff alleges that any statement by defendants constitutes defamation, which defendants expressly deny, such statement was a privileged communication and was not made with express malice, ill will, hostility, or an intent to injure or defame plaintiff.

## SIXTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff alleges that any statement by defendants constitutes defamation, which defendants expressly deny, such statement was made only to persons with a common interest in the subject matter of the communications, and was made with a *bona fide* intent to protect defendants' interests in a matter in which defendants were concerned.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff alleges that any statement by defendants constitutes defamation, which defendants expressly deny, such statement was truthful and was made in good faith and with good motives, and cannot be the basis of an action for defamation.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff's claims are barred, either in whole or in part, by any applicable statute of limitations, plaintiff is precluded from recovering on those claims.

## NINETEENTH AFFIRMATIVE DEFENSE

Further defending as to Count XII, plaintiff's claim is barred because she failed to provide sufficient medical certification confirming circumstances that entitled her to leave under the FMLA or of her ability to resume her duties.

## TWENTIETH AFFIRMATIVE DEFENSE

Further defending as to Count XIII, plaintiff's claim is barred by her prior material breaches.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Further defending as to Counts I, II, IX, X and XI, defendant Jerry is entitled to qualified immunity because plaintiff cannot establish that he violated a clearly established statutory or constitutional right of which a reasonable person would have known under similar circumstances or facts.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Further defending as to Counts XIV and XV, defendants are entitled to the protection and benefits of sovereign immunity under Section 768.28, *Florida Statutes.*

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Further defending as to Counts XIV and XV, plaintiff's claims are barred by the failure to satisfy conditions precedent set forth in Section 768.28, *Florida Statutes.*

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Further defending as to Counts XIV and XV, in the event of a judgment in favor or the plaintiff, defendants assert that the plaintiff's recovery should be reduced by the total amount of all collateral sources paid or payable to the plaintiff under Section 768.76, *Florida Statutes,* or any other applicable law.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Further defending as to Counts XIV and XV, in the event of a judgment in favor of the plaintiff, defendants are entitled to have the judgment made payable in accordance with the Alternative Methods Payment of Damage Awards provision of Section 768.78, *Florida Statutes.*

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Further defending as to Counts V and VI, such claims are preempted by Title VII.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Further defending as to Counts I, II, IX, X and XI, such claims are barred by Eleventh Amendment immunity.

**WHEREFORE,** defendants respectfully request that this Court enter judgment in their favor and grant whatever relief the Court deems just, including an award of defendants' costs and attorneys' fees.

## COUNTERCLAIM

For its counterclaim against Plaintiff/Counter-Defendant Sherrie Russell-Brown ('Russell-Brown"), the University of Florida Board of Trustees ("UF") alleges as follows:

1.      UF hereby counterclaims against Russell-Brown under Fed.R.Civ.P. 13 for breach of the Separation Agreement and General Release ("Separation Agreement") executed between the Board and Russell-Brown, a copy of which is attached hereto as Exhibit "A."

2.      As alleged in Paragraph No. 7 of the Verified Complaint, UF is a public body corporate pursuant to Section 1001.72, *Florida Statutes*.

3.      Russell-Brown is a former employee of UF.

4.      Jurisdiction in this Court is proper pursuant to Rule 13 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367.

5.      Effective December 11, 2007, UF and Russell-Brown entered into the Separation Agreement attached hereto as Exhibit "A."

6.      Pursuant to Section II (E) of the Separation Agreement, Russell-Brown agreed to "fully release and discharge the Released Parties (UF and its present or former trustees, directors, executives, officers, employees, predecessors, agents and legal representatives) from any and all claims of any nature, whether known or unknown, which Russell-Brown has or may have arising out, related to, or in connection with her employment through the Effective Date of this Agreement."

7.      Pursuant to Section II (E) of the Separation Agreement, Russell-Brown agreed that she would "not assert any event occurring prior to the Effective Date of this Agreement as evidence of discriminatory or retaliatory conduct or past practice in any subsequent lawsuit brought against the Board after the Effective Date of this Agreement."

8.      Pursuant to Section II (E) of to the Separation Agreement, Russell-Brown agreed that she "will not institute any legal or Administrative Proceeding (as defined in Paragraph I.D., above) against the Released Parties as to any matter based upon, arising out of, or related to her employment or compensation with the Board through the Effective Date of this Agreement."

9.      Pursuant to Section II (G) of to the Separation Agreement, Russell-Brown agreed "not to disparage the Board in any way."   She further agreed not to make "any derogatory or disparaging statement to anyone regarding the Board or any of its present or former trustees, directors, executives, officers, employees, predecessors, agents and legal representatives."

10.     Pursuant to Section II(K)(1) of the Separation Agreement, Russell-Brown agreed that, in the event that she brought any action against the Released Parties based on any claim released under the Separation Agreement, UF could "seek any and all remedies available, including, but not limited to injunctive relief, and monetary damages, costs, and reasonable attorneys' fees."

11.     UF has performed its obligations under the Separation Agreement, including paying Russell-Brown the monies referenced in Section II(A)(1) of the Separation Agreement.

12.     Russell-Brown has breached the Separation Agreement by bringing released claims in the instant action and by communicating derogatory or disparaging statements concerning "the Board" (as defined in the Separation Agreement)  to third parties, including, but not limited to, the American Bar Association and The Association of American Law Schools.

13.     As a direct and proximate result of Russell-Brown's breach of the Separation Agreement, UF has suffered damages in the amount to be proven at trial.

14.     UF has retained the undersigned counsel and is obligated to pay the attorneys' fees and costs incurred in connection with this counterclaim.

## PRAYER FOR RELIEF

**WHEREFORE**, UF prays for the following relief:

A.     An injunction requiring Russell-Brown to adhere to her obligations under Separation Agreement.

B.     An award of its damages in an amount to be established at trial.

C.     An award of its attorneys' fees and costs.

D.     An award of such further equitable and legal relief as the Court deems proper.

Respectfully submitted,

/s/ Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
E-mail: mccrear@gtlaw. com
GREENBERG TRAURIG, P.A.
625 E. Twiggs Street, Suite 100
Tampa, Florida 33602
Telephone: (813) 318-5704
Facsimile: (813) 318-5900
Counsel for defendants

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 26, 2010 I served the foregoing by electronic and U.S. Mail upon the following:

Lennox S. Hinds, Esquire
Stevens, Hinds & White, P.C.
116 W. 111th Street
New York, NY 10026

/s/ Richard C. McCrea, Jr.
**Attorney**



# SEPARATION AGREEMENT AND GENERAL RELEASE

This SEPARATION AGREEMENT AND GENERAL RELEASE (sometimes referred to as the "Agreement") is entered into by and between the Board of Trustees of the University of Florida, its trustees, directors, executives, officers, employees, former employees, predecessors, agents and legal representatives (herein collectively referred to as "the Board"), and Sherrie Russell-Brown, her heirs, executors, administrators, representatives, attorneys, agents, and assigns ("Russell-Brown").

WHEREAS, Russell-Brown is currently in an unpaid leave status; and

WHEREAS, the Board has not exercised its right to issue Russell-Brown a notice of nonrenewal; and

WHEREAS, Russell-Brown has freely and voluntarily decided to end her employment by the University of Florida effective upon execution of the Agreement; and

WHEREAS, Russell-Brown and the Board have determined that their respective interests would best be served by resolving any and all grievances, disputes, and claims Russell-Brown has or may have against the Board, including, but not limited to, all grievances, disputes and claims arising from or related to Russell-Brown's employment with the Board as of and including the date of her execution of this Agreement;

NOW, THEREFORE, in consideration of the mutual promises and covenants exchanged, and other good and valuable consideration as set forth in this Agreement, the receipt and sufficiency of which is hereby acknowledged, Russell-Brown and the Board, intending to be legally bound, hereby acknowledge and agree to the following:

Russell-Brown agrees that she will resign her employment effective December 31, 2007 and immediately execute the resignation letter, attached to the Agreement as Appendix 1.

## I. Definitions

For purposes of this Agreement, the following Definitions will apply:

A. **Effective Date.** The "Effective Date" of this Agreement is the date the Agreement is fully executed.

B. **Released Parties.** The "Released Parties" are the Board and its present or former trustees, directors, executives, officers, employees, predecessors, agents and legal representatives.

C. **Releasing Parties.** The "Releasing Parties" are Russell-Brown and her attorneys, heirs, executors, administrators, representatives, agents, and assigns.

D. **Administrative Proceeding.** An "Administrative Proceeding" includes any charge or complaint or other action instituted with a federal, state, or local governmental agency other than the U.S. Equal Employment Opportunity Commission ("EEOC").

(Please initial)
Russell-Brown _____
Board Representative _____

This release includes, but is not limited to, the following claims: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended; the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; any claims under the Florida Civil Rights Act of 1992, as amended, Section 760.01 *et. seq.*, Florida Statutes (2006); the Florida Whistleblower's Act, Section 112.3187 *et seq.*, Florida Statutes (2006); the Florida Workers' Compensation Act, the Federal Civil Rights Act of 1991, P.L. 103-50; the Family and Medical Leave Act of 1993; 29 U.S.C. Section 2601 *et seq.*; the Federal Rehabilitation Act of 1973, as amended, 29 U.S.C. Sections 793 and 794; the Florida and/or United States Constitutions, as amended; the Civil Rights Act of 1866 and 1871, 42 U.S.C. Sections 1981, 1983, 1985 and 1986; any claims for wrongful discharge, discrimination, retaliation, harassment, breach of contract, intentional or negligent infliction of emotional distress, false arrest, assault, battery, defamation, interference with contract, or any other cause of action based on federal, state, or local law or the common law, whether in tort, in contract or any other theory of law whatsoever. Russell-Brown further agrees that she and the other Releasing Parties will not institute any legal or Administrative Proceeding (as defined in Paragraph I.D, above) against the Released Parties as to any matter based upon, arising out of, or related to her employment or compensation with the Board through the Effective Date of this Agreement.

F.      Non-Admission of Liability. Russell-Brown and the Board agree that they have entered mutually into this Agreement and that entry into this Agreement is not an admission of any liability or wrongdoing on the part of the Board, or Russell-Brown.

G.      Communications to Third Parties. Russell-Brown agrees not to disparage the Board in any way. Russell-Brown shall not make any derogatory or disparaging statement to anyone regarding the Board or any of its present or former trustees, directors, executives, officers, employees, predecessors, agents and legal representatives. The Board agrees to direct requests for employment references to its Office of Human Resource Services and to limit responses to such requests to confirming dates of employment, position, assigned duties, salary, and other similar factual information relating to her employment. The Board and the Office of Human Resource Services agree not to disparage Russell-Brown in any way. The Board and the Office of Human Resource Services shall not make any derogatory or disparaging statement to anyone regarding Russell-Brown. This provision is not intended to prevent Russell-Brown or the Board from testifying truthfully if compelled to do so by subpoena or court order.

H.      Confidentiality. Russell-Brown agrees that she will not disclose the fact of and/or contents or terms of this Agreement, including the amount of monetary payments, to anyone other than her attorneys or financial advisers, or pursuant to an appropriate order or lawful subpoena from a court or other entity with competent jurisdiction, and that she will not display, discuss or make public in any manner whatsoever the fact of the Agreement, the terms, or the contents of the Agreement unless required to disclose the same by law. The Board agrees that it will not disclose the fact of and/or contents or terms of this Agreement, including the amount of monetary payments, to anyone outside the University other than its attorneys or financial advisers and auditors, or pursuant to an appropriate order or lawful subpoena from a court or other entity with competent jurisdiction, and that it will not display, discuss or make public in any manner whatsoever the fact of the Agreement, the terms, or the contents of the Agreement unless required to disclose the same by law.

I.      Entire Agreement; Modification. The parties agree that this is the entire agreement between the parties. This Agreement overrides and replaces all prior negotiations and terms proposed or

(Please initial)
Russell-Brown ___*SRB*___
Board Representative _____

discussed, whether in writing or orally, about the subject matter of this Agreement. No modification of this Agreement will be valid unless it is in writing identified as an Amendment to the Agreement and is signed by Russell-Brown and an authorized executive of the Board.

J.   Governing Law and Venue. This Agreement is governed by and shall be construed in accordance with the laws of the State of Florida.

K.   Remedies for Breach.

(1)   Breach by Russell-Brown. In the event that the Releasing Parties bring an action against the Released Parties based on any other claim released in Paragraph II.E, the Released Parties may, at their option, and as applicable (a) demand the return of any payments that have been made under this Agreement; (b) plead this Agreement in bar to any such action; and (c) seek any and all remedies available, including but not limited to injunctive relief and monetary damages, costs and reasonable attorneys' fees.

(2)   Breach by the Board. In the event that the Released Parties breach this Agreement, the Releasing Parties will be entitled to bring an action for breach of this Agreement but not for any claims released by Paragraph II.E.

L.   Severability. Each provision of this Agreement is intended to be severable. If any court of competent jurisdiction determines that any provision of this Agreement is invalid, illegal or unenforceable in any respect, the rest of the Agreement will remain in force.

RUSSELL-BROWN ACKNOWLEDGES THAT SHE HAS CAREFULLY READ THIS SEPARATION AND RELEASE AGREEMENT, AND KNOWS AND UNDERSTANDS ITS CONTENTS, AND VOLUNTARILY SIGNS IT OF HER OWN FREE WILL.

IN WITNESS WHEREOF, the parties sign this Agreement on the dates indicated below with the intent to be bound by its terms and conditions.

BOARD OF TRUSTEES OF THE UNIVERSITY OF FLORIDA

_____          By: _____
SHERRIE RUSSELL-BROWN

Date: _November 30, 2007_          Date: _December 11, 2007_

(Please initial)
Russell-Brown _____
Board Representative _____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

SHERRIE RUSSELL-BROWN,

      **Plaintiff,**

v.                        **CASE NO. 1:09-CV-00257-MP-AK**

**THE UNIVERSITY OF FLORIDA**
**BOARD OF TRUSTEES,**
**THE UNIVERSITY OF FLORIDA,**
**LEVIN COLLEGE OF LAW, and**
**ROBERT H. JERRY, II, in his individual**
**and official capacities as Dean of the**
**University of Florida, Levin College of Law,**

      **Defendants.**

_____/

### AMENDED ANSWER,
### AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants hereby respond to the correspondingly-numbered paragraphs of Plaintiff Sherrie Russell-Brown's Verified Complaint as follows:

1.      Defendants aver that they have not engaged in any unlawful employment practice, including but not limited to unlawful discrimination, harassment, retaliation or violation of the Family and Medical Leave Act, and therefore admit only that Plaintiff purports to bring this action pursuant to 42 USC §1981, 42 USC §2000e *et seq.*, 20 USC §1681 *et seq.*, 42 USC § 2000d *et seq.*, 29 USC § 2601 *et seq.* and 42 USC §1983. Liability and any entitlement to relief is specifically denied.

2.      Defendants aver that they have not breached any contract, defamed Plaintiff, or intentionally inflicted emotional distress upon Plaintiff, and therefore admit only that Plaintiff purports to assert such claims. Liability and any entitlement to relief is specifically denied.

3.      Admitted for subject matter jurisdictional purposes only. Liability and any entitlement to relief are specifically denied.

4. Admitted for subject matter jurisdictional purposes only. Liability and any entitlement to relief are specifically denied.

5. Denied.

6. Admitted Plaintiff is and was an African American female, to defendants' knowledge and belief, residing in Plainfield, New Jersey and not in Gainesville, Florida.

7. Admitted.

8. Denied that The University of Florida, Levin College of Law ("the Law School") is a separate employer. The remaining allegations of Paragraph 9 of the Verified Complaint are admitted.

9. Admitted.

10. Denied that investigation revealed facts establishing reasonable cause to believe any statute has been violated or that Plaintiff has fulfilled all conditions precedent to instituting this action. The remaining allegations of Paragraph 10 of the Verified Complaint are admitted.

11. Denied.

12. Defendants aver that the referenced letter speaks for itself. The remaining allegations of this paragraph are denied.

13. Defendants aver that the referenced e-mail speaks for itself. The remaining allegations of this paragraph are denied.

14. Denied.

15. An October 30, 2000 news report in the New York Times discussed "accusations of racism" and "an unusually public debate about the role of diversity in legal education" at the College. An April 26, 2001 news report in the New York Times discussed the report of a consultant retained by the Law School to assist the Law School. The news report stated that the consultant's report praised law school faculty for making improvements in race relations over the past few

months. An October 26, 2000 news report in Black Issues in Higher Education reported that the Law School had taken steps to hire a race relations consultant to help the school with retention of faculty of color. These news reports speak for themselves. Moreover, such publications are wholly irrelevant to any employment decision regarding Plaintiff. Thus, the allegations of Paragraph 15 of the Verified Complaint are denied.

16.     Defendants aver that Plaintiff is the source of Defendants' information and belief that the allegations of this paragraph are true, but Defendants lack independent knowledge and, therefore, the allegations are denied.

17.     Admitted.

18.     Plaintiff's overall record of teaching, scholarship, and service during her employment at the Law School was unsatisfactory and therefore the allegations of Paragraph 18 of the Verified Complaint are denied.

19.     Defendants admit that plaintiff was nominated for "Professor of the Year." Defendants further assert that to be nominated for "Professor of the Year," at least one student in the Law School must suggest that a particular professor receive the Professor of the Year award for the year in question. The Law School had approximately 1300 students during each of the years in question, and defendants are without knowledge as to whether one student or what number of students may have nominated her in each of those years. Any suggestion that Plaintiff received an award for teaching is specifically denied.

20.     Denied as the evaluation in question speaks for itself. The characterization of the evaluation as "excellent" is specifically denied. The accuracy of the quotations is admitted.

21.     Denied as the evaluation in question speaks for itself. The accuracy of the quotation is admitted.

22.     Denied as the evaluation in question speaks for itself.

23. Denied as the evaluation in question speaks for itself. The accuracy of the quotation is admitted.

24. Denied as the evaluation in question speaks for itself. The accuracy of the quotations is admitted.

25. Denied as the evaluation in question speaks for itself. The accuracy of the quotations is admitted.

26. The accuracy of the quotation is admitted. Otherwise denied, as the evaluation in question speaks for itself.

27. Defendants aver that some of Plaintiff's colleagues questioned the depth of her scholarship. Admitted she was promoted. The accuracy of the quotation is admitted. The letter informing Plaintiff of promotion otherwise speaks for itself. The remaining allegations of Paragraph 27 of the Verified Complaint are denied.

28. Denied as the email dated June 1, 2004 speaks for itself. The accuracy of the quotation is admitted. The allegations of Paragraph 28 are otherwise denied.

29. Defendants aver that the form letter dated August 19, 2004 speaks for itself. Defendants deny that Plaintiff was selected to receive a merit raise in recognition of exceptional performance in the areas of teaching, research and service.

30. Defendants aver that Plaintiff is the source of Defendants' information and belief that the allegations of this paragraph are true, but Defendants lack independent knowledge and, therefore, the allegations are denied.

31. Admitted.

32. Defendants admit that the University's regulations applied to plaintiff's employment. Otherwise denied.

33.     Defendants aver that the University's regulations speak for themselves.  Otherwise denied.

34.     Defendants aver that the University's regulations speak for themselves.  Otherwise denied.

35.     Defendants aver that the University's regulations speak for themselves.  Otherwise denied.

36.     Defendants aver that the University's regulations speak for themselves.  Otherwise denied.

37.     Defendants aver that the University's regulations speak for themselves.  Otherwise denied.

38.     Defendants aver that the University's regulations speak for themselves.  Otherwise denied.

39.     Defendants admit that Plaintiff pursued a D. Phil. degree at Oxford during her employment, and further deny that Plaintiff performed her employment as a professor of the Law School at the same time, averring that Plaintiff's pursuit of a degree at Oxford, in the manner she pursued it, materially detracted from her performance of her duties as a faculty member at the Law School.

40.     Defendants aver that Plaintiff's request in the spring of 2004 for a one-year leave beginning in the fall 2004 semester to pursue a D. Phil. was not submitted in a timely manner. Plaintiff did not inform the Law School of a two-year residency requirement, and instead requested and was granted only a one-year leave of absence from the Law School. This leave was granted after Plaintiff threatened to resign if the leave were not granted. Plaintiff was instructed not to submit a late request for leave again. Plaintiff's request in the spring of 2005 for another one-year leave of absence beginning in the fall 2005 semester was not submitted in a timely manner. This leave

request was denied. After further discussions, the Law School did agree to allow Plaintiff a leave of absence for the 2006 calendar year, but insisted that Plaintiff teach in the fall 2005 semester as scheduled. Plaintiff agreed to return for the fall 2005 semester and to teach and perform her other assigned duties. Approximately one week before the start of the fall 2005 semester, Plaintiff announced that she would not return for the fall 2005 semester and produced documents purporting to show the need for a medical leave of absence shortly before her classes were to begin and significantly affecting the scheduling of classes. Plaintiff declined to undergo a medical exam in Gainesville, Florida, which was her place of employment. Plaintiff asked the secretarial staff to forward her mail to an address in Oxford. After her paid sick leave was exhausted, Plaintiff obtained a purported medical certification of her ability to work beginning on November 10, 2005. Plaintiff returned to Gainesville and performed various tasks for the few weeks remaining that semester. Thus, the allegations of Paragraph 40 of the Verified Complaint are denied.

41.     Defendants aver that the University's regulations speak for themselves. Without derogating from this, University regulations count leaves of absence for the purposes of the "tenure clock" where the primary purpose of the leave is to conduct research, and further aver that, on information and belief, all or some of Plaintiff's leave of absence was for that purpose. Plaintiff inquired about the impact of her leaves on the tenure clock via e-mails in May and June 2005. On July 1, 2005, defendant Jerry sent Plaintiff an e-mail which stated: "Exactly what happens with the tenure clock is something we will need to work out at the time of your leave request, and the result will depend on what you are doing in Oxford with your leave without pay." Thus, the allegations of Paragraph 41 of the Verified Complaint are denied.

42.     Denied that Plaintiff published the referenced report, Defendants aver that, on information and belief, the article was published by an arm of the AFL-CIO called the American Center for International Labor Solidarity, which lists Plaintiff as an independent consultant in connection with the work. Any suggestion that the referenced report was published by the Woodrow Wilson International Center is denied. Defendants further deny any implication that such publication in a non-peer reviewed journal would meet scholarship requirements for tenure purposes. Defendants further aver that, on information and belief, Plaintiff has never met the requirements to obtain a D. Phil. from Oxford, to include producing a thesis. Defendants are without knowledge as to the remaining allegations of this Paragraph and, therefore, they are denied.

43.     Admitted that Plaintiff had email communications with faculty members of the University of Florida and the Law School. The contents of these communications speak for themselves and, therefore, the remaining allegations of Paragraph 43 of the Verified Complaint are denied.

44.     Denied that Associate Dean Patrick Shannon made any such statement regarding a Dean of the Law School, and instead defendants aver that he opined that consideration of the race of a prospective dean would be improper. Because Plaintiff's email speaks for itself, the remaining allegations of this paragraph are denied.

45.     Defendants admit that Associate Dean Dawson called Oxford to determine whether plaintiff was in attendance there. Otherwise denied.

46.     Defendants deny the allegations of Paragraph 46 of the Verified Complaint.

47.     Admitted Plaintiff returned to Gainesville in January 2007. Otherwise denied.

48.     Defendants deny the allegations of Paragraph 48 of the Verified Complaint.

49.     Defendants deny the allegations of Paragraph 49 of the Verified Complaint.

50.     Defendants aver that Plaintiff's office was in the same condition or substantially similar condition in which she left it and further aver that, at her request, the Law School had procured appropriate office furniture for her use. The remaining allegations of Paragraph 50 of the Verified Complaint are denied.

51.     Defendants aver that they do not generally monitor or control faculty members' housekeeping within their offices.    Defendants otherwise deny the allegations of Paragraph 51 of the Verified Complaint.

52.     Defendants aver that plaintiff expressly directed her secretary to look through her mail for a document that plaintiff needed while she was overseas and that no other personal mail belonging to the plaintiff was opened. Otherwise denied.

53.     Defendants deny the allegations of Paragraph 53 of the Verified Complaint.

54.     Defendants deny the allegations of Paragraph 54 of the Verified Complaint.

55.     Defendants admit that plaintiff complained to Associate Dean Dawson about the condition of her office and the opening of her mail. Otherwise denied.

56.     Defendants aver that, to the extent certain of Plaintiffs' colleagues chose to limit their interactions with her, such choice was the result of Plaintiffs' personal interactions with those colleagues. At no time were faculty or anyone else instructed or encouraged to shun Plaintiff. Thus, the allegations of Paragraph 56 of the Verified Complaint are denied.

57.     Defendants deny the allegations of Paragraph 57 of the Verified Complaint.

58.     Defendants aver that an African-American colleague of Plaintiff may have accidentally brushed against her during the change from one class to another. An investigation by the Law School administration of this alleged incident at the time it was first alleged found no fact or circumstance supporting Plaintiff's allegation, and the Law School administration concluded that her allegation was false. Plaintiff also complained that a different faculty colleague of color turned her

back on her at the time of this incident, but the faculty colleague had not met her at the time of this alleged incident, did not know her, and would not have recognized her. Therefore, the allegations of Paragraph 58 of the Verified Complaint are denied.

59.     Defendants deny the allegations of Paragraph 59 of the Verified Complaint.

60.     Defendants aver that no action was taken against Plaintiff's colleague because the Law School administration concluded that Plaintiff's allegation was false. Defendants otherwise deny the allegations of Paragraph 60 of the Verified Complaint.

61.     Defendants deny the allegations of Paragraph 61 of the Verified Complaint. Further, Defendants deny any knowledge that any student acted aggressively towards Plaintiff and Defendants further aver that, if any student did act aggressively, he did so without authorization or knowledge of, and was not condoned by, Defendants.

62.     Defendants deny any knowledge of allegations of Paragraph 62 of the Verified Complaint and further aver that, if any student acted aggressively, he did so without any authorization or knowledge, and was not condoned, by Defendants. Defendants further aver that, if any student sent a threatening e-mail to Plaintiff, he did so without authorization or knowledge of, and was not condoned by, Defendants.

63.     Defendants deny the allegations of Paragraph 63 of the Verified Complaint.

64.     Defendants aver that the quality of Plaintiff's teaching in the spring 2007 Torts class was unsatisfactory and failed to meet minimum performance expectations for faculty at the Law School. On April 18, 2007, Plaintiff sent an e-mail to the students in her class in which she criticized the class for its inability to control their emotions and behavior. In this e-mail, Plaintiff abruptly announced that she was cancelling all remaining classes. This cancellation had the effect of preventing students from having the opportunity to complete student evaluations as required by University regulations. The Law School provided those students the opportunity to complete

9

student evaluations as required by University regulations. The Law School provided those students the opportunity to complete student evaluations in a regularly scheduled review session. Defendants admit that Dean Inman received criticisms of Plaintiff's teaching from students in Plaintiff's Spring 2007 Torts class, but deny that these criticisms were solicited. Otherwise denied.

65.     Defendants admit that, on April 19, 2007, Plaintiff sent e-mails to the Provost, which speak for themselves. Otherwise denied.

66.     Denied.

67.     Defendants aver that Plaintiff failed to follow the requirements of administering the SUSSAI by abruptly cancelling class without providing students the opportunity to complete their evaluations. The allegations of Paragraph 67 are otherwise denied.

68.     Defendants aver that the policy speaks for itself. Defendants re-aver their response to Paragraph 67 of the Verified Complaint, and further aver that any shortcomings with the administration of the SUSSAI were caused by Plaintiff. The remaining allegations of Paragraph 68 of the Verified Complaint are denied.

69.     Defendants re-aver their response to Paragraph 67 of the Verified Complaint, and further aver that any shortcomings with the administration of the SUSSAI were caused by Plaintiff. The remaining allegations of Paragraph 69 are denied.

70.     The allegations of Paragraph 70 are denied.

71.     Defendants aver that on Friday, August 17, 2007, before classes were scheduled to begin on Monday, August 20, 2007, Plaintiff contacted defendant Jerry from New Jersey claiming the need for a medical leave of absence for an unknown and unspecified period of time due to an unspecified heart condition. Defendants further aver that, due to Plaintiff's past history of claiming she was medically precluded from teaching, because of the unknown length of any medical leave, because classes started on August 20, 2007, and because Plaintiff failed to respond to the Law

School's questions asked in e-mail and by attempted telephone communications during the period from August 17, 2007 to August 21, 2007, about when she expected she would be able to come to Gainesville to teach her classes and whether or not she would be able to assume her teaching responsibilities that semester, the Law School prudently took necessary steps to protect its students by reassigning her class to another faculty member so that the Law School could fulfill its obligation to provide an instructor for the students in her class. Thus, the allegations of Paragraph 71 are denied.

72.     Admitted defendant Jerry left a message for Plaintiff regarding her assignment. The allegations of Paragraph 72 are otherwise denied.

73.     Defendants deny the allegations of Paragraph 73 of the Verified Complaint.

74.     Defendants aver that the August 24, 2007 e-mail speaks for itself. Otherwise denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Defendants deny the allegations of Paragraph 79 of the Verified Complaint.

80.     Defendants aver that, on August 21, 2007, defendant Jerry e-mailed Plaintiff at 1:47 p.m., telling her that her failure to communicate with the Law School by 9:00 a.m. that morning despite repeated requests that she do so, and her failure to respond to multiple messages that she call the Dean "immediately" on that date, so that the Law School could determine whether (and if so, when) she would be in Gainesville to teach her Torts class, had resulted in her class being reassigned to another faculty member in order to ensure that the class would start at the beginning of the term and meet on a regular basis. The e-mail also advised Plaintiff that she needed to schedule as soon as possible a time to discuss what her fall assignment would be at the Law School. Plaintiff replied to

this e-mail at 5:29 p.m. on August 21, 2007, and stated that she did not understand why her class had been reassigned. Plaintiff took no steps to schedule a meeting with the Dean as instructed. In an e-mail on August 23, 2007, at 12:12 p.m., defendant Jerry told Plaintiff that because she had not scheduled a meeting with him as instructed, he had scheduled an appointment for her to see him in his office on Monday, August 27, at 1:00 p.m. This e-mail also informed Plaintiff that her sick leave would expire on Monday, August 27th if used continuously after August 16th. In an e-mail sent by Plaintiff to defendant Jerry on August 23, 2007 at 3:06 p.m., plaintiff advised him that she had contacted the Office of the President for the purpose of starting a grievance against defendant Jerry, as well as formal complaints of harassment and sex discrimination with the Office of Equal Employment Opportunity. On August 24, 2007, Plaintiff telephoned the defendant Jerry's assistant to tell her that she was unavailable to meet on August 27, 2007. Defendant Jerry's assistant rescheduled the meeting for Thursday, September 6th. Defendant Jerry sent an e-mail to Plaintiff on August 24, 2007, at 3:01 p.m. confirming the September 6th appointment, advising her that it was the Law School's understanding that she was not well enough to work, advising her that she would be kept in a paid sick leave status until her sick leave was exhausted, requesting that she provide medical certification documenting her current illness, and requesting that if she intended to resume work that she provide medical documentation that she was well enough to return to work. Because defendant Jerry was unwilling to meet privately with a faculty member who had announced an intention to grieve against him, his e-mail conveyed his understanding that Plaintiff intended to have a member of the university EEO office sit in as an observer at the September 6th meeting. Although Plaintiff refused to meet with defendant Jerry to discuss her work assignment, Plaintiff demanded that someone e-mail her details of her reassignment. Defendants deny the remaining allegations of Paragraph 80 of the Verified Complaint.

81.     Defendants admit that plaintiff expressed an intent to file a complaint of harassment and discrimination with the EEO Office against defendant Jerry and that plaintiff requested that a member of the EEO office accompany her to a meeting with defendant Jerry. Otherwise denied.

82.     Defendant Jerry's August 24, 2007 e-mail speaks for itself. Otherwise denied.

83.     Admitted that plaintiff sent an e-mail to the listed individuals on August 25, 2007, which speaks for itself. Otherwise denied.

84.     Defendants are without knowledge as to the content of the communication to which Plaintiff refers and, therefore, deny the allegations of Paragraph 84 of the Verified Complaint.

85.     Defendants admit that, on August 31, 2007, plaintiff filed an internal discrimination, retaliation and harassment complaint against defendant Jerry and Associate Dean Dawson, which was investigated and found to be unsubstantiated. Otherwise denied.

86.     Defendants are without knowledge as to Plaintiff's contact with the EEOC and, therefore, deny the allegations of Paragraph 85 of the Verified Complaint.

87.     Defendants re-aver the contents of Paragraph 80. In an e-mail sent by Plaintiff to the defendant Jerry on August 24th, 2007, at 4:56 p.m., Plaintiff disputed the sick leave calculation communicated in defendant Jerry's August 23, 2007 e-mail, claiming that because she informed the Law School that she was sick on August 17th, August 16th should not be counted as a sick day, and that her last day of sick leave would expire on August 29th. In an e-mail sent by defendant Jerry to Plaintiff on August 24, 2007 at 5:49 p.m., he explained that because Plaintiff had sent an e-mail to the College on August 17th stating that she had been in contact with her physicians on August 16th, the Law School had assumed that she was sick on August 16th. The e-mail also said that "We will, however, follow up with HR to make sure that the sick leave calculation is done properly." The Law School decided to give Plaintiff two extra days of sick leave. By August 29, 2007, Plaintiff had

exhausted all accrued leave and had not returned to work. She was therefore placed on a leave without pay status. The remaining allegations of Paragraph 86 are denied.

87.     Defendants re-aver the contents of Paragraph 86. The allegations of Paragraph 87 are otherwise denied.

88.     The allegations of Paragraph 88 are denied.

89.     The allegations of Paragraph 89 are denied.

90.     The allegations of Paragraph 90 are denied.

91.     The allegations of Paragraph 91 are denied.

92.     The University's regulations speak for themselves. Defendants otherwise deny the allegations of Paragraph 92 of the Verified Complaint.

93.     The University's regulations speak for themselves. The allegations of Paragraph 93 are otherwise denied.

94.     Defendants deny that Plaintiff was entitled to notice of nonrenewal and further aver that Plaintiff voluntarily resigned her employment prior to any nonrenewal. The remaining allegations of Paragraph 94 are denied.

95.     The University's regulations speak for themselves. Defendants otherwise deny the allegations of Paragraph 95 of the Verified Complaint.

96.     Defendants deny the allegations of Paragraph 96 of the Verified Complaint.

97.     Defendants deny the allegations of Paragraph 97 of the Verified Complaint.

98.     Defendants are without knowledge and, therefore, deny the allegations of Paragraph 98 of the Verified Complaint.

99. Defendants admit that, by letter to the Law School's President Machen dated September 13, 2007, plaintiff requested the commencement of a Step I Grievance Review. Defendants further aver that plaintiff's request for a Step I Grievance Review speaks for itself. Otherwise denied.

100. Defendants aver that plaintiff transmitted additional correspondence to the Law School's President Machen dated September 17, 2007 and October 2, 2007, which correspondence speaks for itself. Otherwise denied.

101. Admitted that, because Plaintiff had exhausted all accrued leave and because she still had not returned to Gainesville, she was placed on a leave without pay status. The remaining allegations of Paragraph 101 are denied.

102. Denied that a final Spring 2008 schedule was completed reflecting Plaintiff being assigned two courses.

103. Defendants deny the allegations of Paragraph 103 of the Verified Complaint.

104. Defendants deny the allegations of Paragraph 104 of the Verified Complaint.

105. The General Release speaks for itself. Defendants otherwise deny the allegations of Paragraph 105 of the Verified Complaint.

106. Defendants deny the allegations of Paragraph 106 of the Verified Complaint.

107. Defendants deny the allegations of Paragraph 107 of the Verified Complaint.

108. The General Release speaks for itself. Defendants otherwise deny the allegations of Paragraph 108 of the Verified Complaint.

109. The General Release speaks for itself. Defendants otherwise deny the allegations of Paragraph 109 of the Verified Complaint.

110. The General Release speaks for itself. Defendants otherwise deny the allegations of Paragraph 110 of the Verified Complaint.

111.    Approximately one week before the start of the fall 2005 semester, Plaintiff announced that she would not return for the fall 2005 semester and produced documents purporting to show the need for a medical leave of absence shortly before her classes were to begin. Although claiming to be too ill to work, Plaintiff had asked the College's secretarial staff to forward her mail to an address in Oxford. Dean Dawson called Oxford University to find out whether Plaintiff could interrupt her academic program there for a full year without consequence so that she could return to Gainesville to teach. Defendants otherwise deny the allegations of Paragraph 111 of the Verified Complaint.

112.    Defendants deny the allegations of Paragraph 112 of the Verified Complaint.

113.    Defendant deny that Plaintiff was "blocked" from pursuing other employment opportunities. Plaintiff's email speaks for itself. The remaining allegations of Paragraph 113 are denied.

114.    Defendants admit that Plaintiff has made public records requests. The allegations of this Paragraph are otherwise denied.

115.    Defendants deny the allegations of Paragraph 115 of the Verified Complaint.

116.    Defendants deny the allegations of Paragraph 116 of the Verified Complaint.

117.    Defendants deny the allegations of Paragraph 117 of the Verified Complaint.

118.    Defendants are without knowledge as to the allegations of Paragraph 118 of the Verified Complaint and, therefore, they are denied.

119.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through 118.

120.    Defendants deny the allegations of Paragraph 120 of the Verified Complaint.

121.    Defendants deny the allegations of Paragraph 121 of the Verified Complaint.

122.    Defendants deny the allegations of Paragraph 122 of the Verified Complaint.

123.   Defendants deny the allegations of Paragraph 123 of the Verified Complaint.

124.   Defendants deny the allegations of Paragraph 124 of the Verified Complaint.

125.   Defendants deny the allegations of Paragraph 125 of the Verified Complaint.

126.   Defendants re-aver and re-allege each and every response to Paragraphs 1 through

125.

127.   Defendants deny the allegations of Paragraph 127 of the Verified Complaint.

128.   Defendants deny the allegations of Paragraph 128 of the Verified Complaint.

129.   Defendants deny the allegations of Paragraph 129 of the Verified Complaint.

130.   Defendants deny the allegations of Paragraph 130 of the Verified Complaint.

131.   Defendants re-aver and re-allege each and every response to Paragraphs 1 through

130.

132.   Defendants deny the allegations of Paragraph 132 of the Verified Complaint.

133.   Defendants deny the allegations of Paragraph 133 of the Verified Complaint.

134.   Defendants deny the allegations of Paragraph 134 of the Verified Complaint.

135.   Defendants deny the allegations of Paragraph 135 of the Verified Complaint.

136.   Defendants deny the allegations of Paragraph 136 of the Verified Complaint.

137.   Defendants re-aver and re-allege each and every response to Paragraphs 1 through

136.

138.   Defendants deny the allegations of Paragraph 138 of the Verified Complaint.

139.   Defendants deny the allegations of Paragraph 139 of the Verified Complaint.

140.   Defendants deny the allegations of Paragraph 140 of the Verified Complaint.

141.   Defendants deny the allegations of Paragraph 141 of the Verified Complaint.

142.   Defendants re-aver and re-allege each and every response to Paragraphs 1 through

141.

143.    Defendants deny the allegations of Paragraph 143 of the Verified Complaint.

144.    Defendants deny the allegations of Paragraph 144 of the Verified Complaint.

145.    Defendants deny the allegations of Paragraph 145 of the Verified Complaint.

146.    Defendants deny the allegations of Paragraph 146 of the Verified Complaint.

147.    Defendants deny the allegations of Paragraph 147 of the Verified Complaint.

148.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

147.

149.    Defendants deny the allegations of Paragraph 149 of the Verified Complaint.

150.    Defendants deny the allegations of Paragraph 150 of the Verified Complaint.

151.    Defendants deny the allegations of Paragraph 151 of the Verified Complaint.

152.    Defendants deny the allegations of Paragraph 152 of the Verified Complaint.

153.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

152.

154.    Defendants deny the allegations of Paragraph 154 of the Verified Complaint.

155.    Defendants deny the allegations of Paragraph 155 of the Verified Complaint.

156.    Defendants deny the allegations of Paragraph 156 of the Verified Complaint.

157.    Defendants deny the allegations of Paragraph 157 of the Verified Complaint.

158.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

157.

159.    Defendants deny the allegations of Paragraph 159 of the Verified Complaint.

160.    Defendants deny the allegations of Paragraph 160 of the Verified Complaint.

161.    Defendants deny the allegations of Paragraph 161 of the Verified Complaint.

162.    Te Law School re-avers and re-alleges each and every response to Paragraphs 1
through 161.

163. Defendants deny the allegations of Paragraph 163 of the Verified Complaint.

164. Defendants deny the allegations of Paragraph 164 of the Verified Complaint.

165. Defendants deny the allegations of Paragraph 165 of the Verified Complaint.

166. Defendants deny the allegations of Paragraph 166 of the Verified Complaint.

167. Defendants deny the allegations of Paragraph 167 of the Verified Complaint.

168. Defendants deny the allegations of Paragraph 168 of the Verified Complaint.

169. Defendants deny the allegations of Paragraph 169 of the Verified Complaint.

170. Admitted.

171. Defendants deny the allegations of Paragraph 171 of the Verified Complaint.

172. Defendants deny the allegations of Paragraph 172 of the Verified Complaint.

173. Defendants deny the allegations of Paragraph 173 of the Verified Complaint.

174. Defendants re-aver and re-allege each and every response to Paragraphs 1 through 173.

175. Admitted.

176. Defendants deny the allegations of Paragraph 176 of the Verified Complaint.

177. Defendants deny the allegations of Paragraph 177 of the Verified Complaint.

178. Defendants deny the allegations of Paragraph 178 of the Verified Complaint.

179. Defendants deny the allegations of Paragraph 179 of the Verified Complaint.

180. Admitted that Defendants act under color of state law. Defendants otherwise deny the allegations of Paragraph 180 of the Verified Complaint.

181. Defendants deny the allegations of Paragraph 181 of the Verified Complaint.

182. Defendants deny the allegations of Paragraph 182 of the Verified Complaint.

183. Defendants deny the allegations of Paragraph 183 of the Verified Complaint.

184.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

183.

185.    Defendants deny the allegations of Paragraph 185 of the Verified Complaint.

186.    Defendants deny the allegations of Paragraph 186 of the Verified Complaint.

187.    Admitted.

188.    Defendants deny the allegations of Paragraph 188 of the Verified Complaint.

189.    Defendants deny the allegations of Paragraph 189 of the Verified Complaint.

190.    Defendants deny the allegations of Paragraph 190 of the Verified Complaint.

191.    Defendants deny the allegations of Paragraph 191 of the Verified Complaint.

192.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

191.

193.    Defendants deny the allegations of Paragraph 193 of the Verified Complaint.

194.    Defendants deny the allegations of Paragraph 194 of the Verified Complaint.

195.    Defendants deny the allegations of Paragraph 195 of the Verified Complaint.

196.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

195.

197.    Admitted.

198.    Admitted.

199.    Admitted.

200.    Defendants deny the allegations of Paragraph 200 of the Verified Complaint.

201.    Defendants deny the allegations of Paragraph 201 of the Verified Complaint.

202.    Defendants deny the allegations of Paragraph 202 of the Verified Complaint.

203.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through

202.

204.    Defendants deny the allegations of Paragraph 204 of the Verified Complaint.

205.    Defendants deny the allegations of Paragraph 205 of the Verified Complaint.

206.    Defendants deny the allegations of Paragraph 206 of the Verified Complaint.

207.    Defendants deny the allegations of Paragraph 207 of the Verified Complaint.

208.    Defendants deny the allegations of Paragraph 208 of the Verified Complaint.

209.    Defendants deny the allegations of Paragraph 209 of the Verified Complaint.

210.    Defendants deny the allegations of Paragraph 210 of the Verified Complaint.

211.    Defendants re-aver and re-allege each and every response to Paragraphs 1 through 210.

212.    Defendants deny the allegations of Paragraph 212 of the Verified Complaint.

213.    Defendants deny the allegations of Paragraph 213 of the Verified Complaint.

214.    Defendants deny the allegations of Paragraph 214 of the Verified Complaint.

215.    Defendants deny the allegations of Paragraph 215 of the Verified Complaint.

216.    Defendants deny the allegations of Paragraph 216 of the Verified Complaint.

217.    Defendants deny the allegations of Paragraph 217 of the Verified Complaint.

218.    Defendants deny the allegations of Paragraph 218 of the Verified Complaint.

219.    Defendants deny the allegations of Paragraph 219 of the Verified Complaint.

220.    Defendants deny the allegations of Paragraph 220 of the Verified Complaint.

All allegations not specifically addressed are hereby denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by accord and satisfaction.

### SECOND AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by estoppel.

## THIRD AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by payment.

## FOURTH AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by release.

## FIFTH AFFIRMATIVE DEFENSE

Further defending, plaintiff's claims are barred by waiver.

## SIXTH AFFIRMATIVE DEFENSE

Further defending, to the extent plaintiff has failed to make a good faith, reasonable effort to mitigate her damages, she is not entitled to relief. Further, if she is unable to do so for medical reasons, she would be unable to perform her duties at the Law School and would not be entitled to compensation at the Law School.

## SEVENTH AFFIRMATIVE DEFENSE

Further defending, defendants are entitled to a set-off for any amounts recovered by plaintiff through her efforts to mitigate damages.

## EIGHTH AFFIRMATIVE DEFENSE

Further defending, to the extent plaintiff has obtained recovery from any collateral source, defendants are entitled to a set-off.

## NINTH AFFIRMATIVE DEFENSE

Further defending with respect to Counts III and V, defendants are not subject to liability for any alleged acts of harassment because defendants exercised reasonable care to prevent and correct promptly any such behavior, and plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by defendants to avoid harm otherwise.

### TENTH AFFIRMATIVE DEFENSE

Further defending, any adverse employment action with respect to plaintiff was taken for legitimate, non-discriminatory and non-retaliatory reasons and was predicated upon a ground other than plaintiff's protected status or exercise of a statutorily protected right.

### ELEVENTH AFFIRMATIVE DEFENSE

Further defending, while denying any unlawful action, even assuming *arguendo* that plaintiff were able to establish any unlawful employment action, the same action would have been taken in the absence of any impermissible motivating factor and, accordingly, plaintiff is not entitled to any relief.

### TWELFTH AFFIRMATIVE DEFENSE

Further defending, while denying any unlawful action, even assuming *arguendo* that plaintiff were able to establish a claim, plaintiff was not entitled to recover punitive damages because defendants made good faith efforts to comply with all applicable laws.

### THIRTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff's claims in Counts III and IV are not the subject of, or reasonably related to, allegations in a timely-filed and properly verified charge with the Equal Employment Opportunity Commission ("EEOC"), such claims are barred for failure to exhaust administrative remedies and failure to satisfy conditions precedent to suit.

### FOURTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff failed to timely file and properly verify a charge with the EEOC within three hundred days of any alleged act of discrimination, retaliation, or harassment, her claims in Counts III and IV are barred for failure to exhaust administrative remedies and failure to satisfy conditions precedent to suit.

## FIFTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent plaintiff alleges that any statement by defendants constitutes defamation, which defendants expressly deny, such statement was a privileged communication and was not made with express malice, ill will, hostility, or an intent to injure or defame plaintiff.

## SIXTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff alleges that any statement by defendants constitutes defamation, which defendants expressly deny, such statement was made only to persons with a common interest in the subject matter of the communications, and was made with a *bona fide* intent to protect defendants' interests in a matter in which defendants were concerned.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff alleges that any statement by defendants constitutes defamation, which defendants expressly deny, such statement was truthful and was made in good faith and with good motives, and cannot be the basis of an action for defamation.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Further defending, to the extent that plaintiff's claims are barred, either in whole or in part, by any applicable statute of limitations, plaintiff is precluded from recovering on those claims.

## NINETEENTH AFFIRMATIVE DEFENSE

Further defending as to Count XII, plaintiff's claim is barred because she failed to provide sufficient medical certification confirming circumstances that entitled her to leave under the FMLA or of her ability to resume her duties.

## TWENTIETH AFFIRMATIVE DEFENSE

Further defending as to Count XIII, plaintiff's claim is barred by her prior material breaches.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Further defending as to Counts I, II, IX, X and XI, defendant Jerry is entitled to qualified immunity because plaintiff cannot establish that he violated a clearly established statutory or constitutional right of which a reasonable person would have known under similar circumstances or facts.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Further defending as to Counts XIV and XV, defendants are entitled to the protection and benefits of sovereign immunity under Section 768.28, *Florida Statutes.*

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Further defending as to Counts XIV and XV, plaintiff's claims are barred by the failure to satisfy conditions precedent set forth in Section 768.28, *Florida Statutes.*

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Further defending as to Counts XIV and XV, in the event of a judgment in favor of the plaintiff, defendants assert that the plaintiff's recovery should be reduced by the total amount of all collateral sources paid or payable to the plaintiff under Section 768.76, *Florida Statutes,* or any other applicable law.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Further defending as to Counts XIV and XV, in the event of a judgment in favor of the plaintiff, defendants are entitled to have the judgment made payable in accordance with the Alternative Methods Payment of Damage Awards provision of Section 768.78, *Florida Statutes.*

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Further defending as to Counts V and VI, such claims are preempted by Title VII.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Further defending as to Counts I, II, IX, X and XI, such claims are barred by Eleventh Amendment immunity.

**WHEREFORE**, defendants respectfully request that this Court enter judgment in their favor and grant whatever relief the Court deems just, including an award of defendants' costs and attorneys' fees.

## COUNTERCLAIM

For its counterclaim against Plaintiff/Counter-Defendant Sherrie Russell-Brown ('Russell-Brown"), the University of Florida Board of Trustees ("UF") alleges as follows:

1.      UF hereby counterclaims against Russell-Brown under Fed.R.Civ.P. 13 for breach of the Separation Agreement and General Release ("Separation Agreement") executed between the Board and Russell-Brown, a copy of which is attached hereto as Exhibit "A."

2.      As alleged in Paragraph No. 7 of the Verified Complaint, UF is a public body corporate pursuant to Section 1001.72, *Florida Statutes.*

3.      Russell-Brown is a former employee of UF.

4.      Jurisdiction in this Court is proper pursuant to Rule 13 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367.

5.      Effective December 11, 2007, UF and Russell-Brown entered into the Separation Agreement attached hereto as Exhibit "A."

6.      Pursuant to Section II (E) of the Separation Agreement, Russell-Brown agreed to "fully release and discharge the Released Parties (UF and its present or former trustees, directors, executives, officers, employees, predecessors, agents and legal representatives) from any and all claims of any nature, whether known or unknown, which Russell-Brown has or may have arising

out, related to, or in connection with her employment through the Effective Date of this Agreement."

7. Pursuant to Section II (E) of the Separation Agreement, Russell-Brown agreed that she would "not assert any event occurring prior to the Effective Date of this Agreement as evidence of discriminatory or retaliatory conduct or past practice in any subsequent lawsuit brought against the Board after the Effective Date of this Agreement."

8. Pursuant to Section II (E) of to the Separation Agreement, Russell-Brown agreed that she "will not institute any legal or Administrative Proceeding (as defined in Paragraph I.D., above) against the Released Parties as to any matter based upon, arising out of, or related to her employment or compensation with the Board through the Effective Date of this Agreement."

9. Pursuant to Section II (G) of to the Separation Agreement, Russell-Brown agreed "not to disparage the Board in any way." She further agreed not to make "any derogatory or disparaging statement to anyone regarding the Board or any of its present or former trustees, directors, executives, officers, employees, predecessors, agents and legal representatives."

10. Pursuant to Section II(K)(1) of the Separation Agreement, Russell-Brown agreed that, in the event that she brought any action against the Released Parties based on any claim released under the Separation Agreement, UF could "seek any and all remedies available, including, but not limited to injunctive relief, and monetary damages, costs, and reasonable attorneys' fees."

11. UF has performed its obligations under the Separation Agreement, including paying Russell-Brown the monies referenced in Section II(A)(1) of the Separation Agreement.

12. Russell-Brown has breached the Separation Agreement by bringing released claims in the instant action and prior actions and by communicating derogatory or disparaging statements concerning "the Board" (as defined in the Separation Agreement) to third parties, including, but not limited to, the American Bar Association and The Association of American Law Schools.

13.     As a direct and proximate result of Russell-Brown's breach of the Separation Agreement, UF has suffered damages in the amount to be proven at trial.

14.     UF has retained the undersigned counsel and is obligated to pay the attorneys' fees and costs incurred in connection with this counterclaim.

## PRAYER FOR RELIEF

**WHEREFORE,** UF prays for the following relief:

A.     An injunction requiring Russell-Brown to adhere to her obligations under Separation Agreement.

B.     An award of its damages in an amount to be established at trial.

C.     An award of its attorneys' fees and costs.

D.     An award of such further equitable and legal relief as the Court deems proper.

Respectfully submitted,

/s/ Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
E-mail: mccrear@gtlaw.com
GREENBERG TRAURIG, P.A.
625 E. Twiggs Street, Suite 100
Tampa, Florida 33602
Telephone: (813) 318-5704
Facsimile: (813) 318-5900
Counsel for defendants

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 26, 2010 I served the foregoing by electronic and U.S. Mail upon the following:

Lennox S. Hinds, Esquire
Stevens, Hinds & White, P.C.
116 W. 111th Street
New York, NY 10026

/s/ Richard C. McCrea, Jr.
**Attorney**

29



EXHIBIT "A"

## SEPARATION AGREEMENT AND GENERAL RELEASE

This SEPARATION AGREEMENT AND GENERAL RELEASE (sometimes referred to as the "Agreement") is entered into by and between the Board of Trustees of the University of Florida, its trustees, directors, executives, officers, employees, former employees, predecessors, agents and legal representatives (herein collectively referred to as "the Board"), and Sherrie Russell-Brown, her heirs, executors, administrators, representatives, attorneys, agents, and assigns ("Russell-Brown").

WHEREAS, Russell-Brown is currently in an unpaid leave status; and

WHEREAS, the Board has not exercised its right to issue Russell-Brown a notice of nonrenewal; and

WHEREAS, Russell-Brown has freely and voluntarily decided to end her employment by the University of Florida effective upon execution of the Agreement; and

WHEREAS, Russell-Brown and the Board have determined that their respective interests would best be served by resolving any and all grievances, disputes, and claims Russell-Brown has or may have against the Board, including, but not limited to, all grievances, disputes and claims arising from or related to Russell-Brown's employment with the Board as of and including the date of her execution of this Agreement;

NOW, THEREFORE, in consideration of the mutual promises and covenants exchanged, and other good and valuable consideration as set forth in this Agreement, the receipt and sufficiency of which is hereby acknowledged, Russell-Brown and the Board, intending to be legally bound, hereby acknowledge and agree to the following:

Russell-Brown agrees that she will resign her employment effective December 31, 2007 and immediately execute the resignation letter, attached to the Agreement as Appendix 1.

### I.   Definitions

For purposes of this Agreement, the following Definitions will apply:

A.   **Effective Date.** The "Effective Date" of this Agreement is the date the Agreement is fully executed.

B.   **Released Parties.** The "Released Parties" are the Board and its present or former trustees, directors, executives, officers, employees, predecessors, agents and legal representatives.

C.   **Releasing Parties.** The "Releasing Parties" are Russell-Brown and her attorneys, heirs, executors, administrators, representatives, agents, and assigns.

D.   **Administrative Proceeding.** An "Administrative Proceeding" includes any charge or complaint or other action instituted with a federal, state, or local governmental agency other than the U.S. Equal Employment Opportunity Commission ("EEOC").

(Please initial)
Russell-Brown _____
Board Representative _____

## II.    Terms .

A.    Benefits.  In consideration for Russell-Brown's execution of this Agreement, and her release of claims as set forth below, the Board will provide to Russell-Brown or, on her behalf, the following (the "Benefits"):

(1)    A one-time lump sum payment of $124,034.07, less applicable tax withholding.  Payment will be made within thirty (30) calendar days after the Effective Date.  Russell-Brown agrees to hold the Board harmless for any tax liability resulting from the payment.

B.    Not Otherwise Entitled.  The parties agree that, apart from this Agreement, Russell-Brown is entitled to no payments or other consideration from the Board.  The Benefits described in Paragraph II.A are contingent upon Russell-Brown's execution of this Agreement, and her compliance with all of the terms of this Agreement.

C.    No Further Obligation.  Russell-Brown agrees that she has been paid all earned and accrued compensation due to her, less applicable deductions, through December 31, 2007.

D.    Acknowledgements.  Russell-Brown acknowledges that she has read and understands this Agreement, and she specifically acknowledges the following:

(1)    That she has been advised by the Board to consult with an attorney, and has had the opportunity to consult with her attorney, if any, before signing this Agreement; and

(2)    That, by signing this Agreement, the parties are not waiving or releasing any claims based on actions or omissions that occur after the date of the signing of this Agreement.

E.    Release.  In exchange for the Benefits described in Paragraph II.A above, the Releasing Parties fully release and discharge the Released Parties from any and all claims of any nature, whether known or unknown, which Russell-Brown has or may have arising out of, related to, or in connection with her employment through the Effective Date of this Agreement.  The Board fully releases and discharges Russell-Brown from any and all claims of any nature, whether known or unknown, which it has or may have arising out of, related to, or in connection with her employment through the Effective Date of this Agreement.  Russell-Brown represents that except for the EEOC she has filed no suit, charge, claim, complaint or action against the Board with respect to her employment or any aspect thereof, and has not authorized anyone else to do so on her behalf; Russell-Brown agrees to voluntarily withdraw any charge filed with the Equal Employment Opportunity Commission or the Florida Commission on Human Relations; and further agrees that she waives the right to recover any monetary award should the Equal Employment Opportunity Commission or the Florida Commission on Human Relations, subsequently file a suit, charge, claim, or action against the Board with respect to her employment with the Board up to the Effective Date of this Agreement.  In further exchange for the consideration provided herein, Russell-Brown agrees never to commence, aid in any way, prosecute, testify in support of (unless required to do so by law), or permit to be commenced against the Board any action or any proceeding based upon any matter occurring at any time in the past up to the Effective Date of this Agreement, or involving any continuing effects of any acts, practices or omissions which occurred or arose prior to the Effective Date of this Agreement.  Russell-Brown may not assert any event occurring prior to the Effective Date of this Agreement as evidence of discriminatory or retaliatory conduct or past practice in any subsequent lawsuit brought against the Board after the Effective Date of this Agreement.

(Please initial)
Russell-Brown ___SRB___
Board Representative _____

This release includes, but is not limited to, the following claims: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended; the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; any claims under the Florida Civil Rights Act of 1992, as amended, Section 760.01 *et. seq.*, Florida Statutes (2006); the Florida Whistleblower's Act, Section 112.3187 *et seq.*, Florida Statutes (2006); the Florida Workers' Compensation Act, the Federal Civil Rights Act of 1991, P.L. 103-50; the Family and Medical Leave Act of 1993; 29 U.S.C. Section 2601 *et seq.*; the Federal Rehabilitation Act of 1973, as amended, 29 U.S.C. Sections 793 and 794; the Florida and/or United States Constitutions, as amended; the Civil Rights Act of 1866 and 1871, 42 U.S.C. Sections 1981, 1983, 1985 and 1986; any claims for wrongful discharge, discrimination, retaliation, harassment, breach of contract, intentional or negligent infliction of emotional distress, false arrest, assault, battery, defamation, interference with contract, or any other cause of action based on federal, state, or local law or the common law, whether in tort, in contract or any other theory of law whatsoever. Russell-Brown further agrees that she and the other Releasing Parties will not institute any legal or Administrative Proceeding (as defined in Paragraph I.D, above) against the Released Parties as to any matter based upon, arising out of, or related to her employment or compensation with the Board through the Effective Date of this Agreement.

F.     Non-Admission of Liability. Russell-Brown and the Board agree that they have entered mutually into this Agreement and that entry into this Agreement is not an admission of any liability or wrongdoing on the part of the Board, or Russell-Brown.

G.     Communications to Third Parties. Russell-Brown agrees not to disparage the Board in any way. Russell-Brown shall not make any derogatory or disparaging statement to anyone regarding the Board or any of its present or former trustees, directors, executives, officers, employees, predecessors, agents and legal representatives. The Board agrees to direct requests for employment references to its Office of Human Resource Services and to limit responses to such requests to confirming dates of employment, position, assigned duties, salary, and other similar factual information relating to her employment. The Board and the Office of Human Resource Services agree not to disparage Russell-Brown in any way. The Board and the Office of Human Resource Services shall not make any derogatory or disparaging statement to anyone regarding Russell-Brown. This provision is not intended to prevent Russell-Brown or the Board from testifying truthfully if compelled to do so by subpoena or court order.

H.     Confidentiality. Russell-Brown agrees that she will not disclose the fact of and/or contents or terms of this Agreement, including the amount of monetary payments, to anyone other than her attorneys or financial advisers, or pursuant to an appropriate order or lawful subpoena from a court or other entity with competent jurisdiction, and that she will not display, discuss or make public in any manner whatsoever the fact of the Agreement, the terms, or the contents of the Agreement unless required to disclose the same by law. The Board agrees that it will not disclose the fact of and/or contents or terms of this Agreement, including the amount of monetary payments, to anyone outside the University other than its attorneys or financial advisers and auditors, or pursuant to an appropriate order or lawful subpoena from a court or other entity with competent jurisdiction, and that it will not display, discuss or make public in any manner whatsoever the fact of the Agreement, the terms, or the contents of the Agreement unless required to disclose the same by law.

I.     Entire Agreement; Modification. The parties agree that this is the entire agreement between the parties. This Agreement overrides and replaces all prior negotiations and terms proposed or

(Please initial)
Russell-Brown _____
Board Representative _____

discussed, whether in writing or orally, about the subject matter of this Agreement. No modification of this Agreement will be valid unless it is in writing identified as an Amendment to the Agreement and is signed by Russell-Brown and an authorized executive of the Board.

J.   Governing Law and Venue. This Agreement is governed by and shall be construed in accordance with the laws of the State of Florida.

K.   Remedies for Breach.

(1)   Breach by Russell-Brown. In the event that the Releasing Parties bring an action against the Released Parties based on any other claim released in Paragraph II.E, the Released Parties may, at their option, and as applicable (a) demand the return of any payments that have been made under this Agreement; (b) plead this Agreement in bar to any such action; and (c) seek any and all remedies available, including but not limited to injunctive relief and monetary damages, costs and reasonable attorneys' fees.

(2)   Breach by the Board. In the event that the Released Parties breach this Agreement, the Releasing Parties will be entitled to bring an action for breach of this Agreement but not for any claims released by Paragraph II.E.

L.   Severability. Each provision of this Agreement is intended to be severable. If any court of competent jurisdiction determines that any provision of this Agreement is invalid, illegal or unenforceable in any respect, the rest of the Agreement will remain in force.

RUSSELL-BROWN ACKNOWLEDGES THAT SHE HAS CAREFULLY READ THIS SEPARATION AND RELEASE AGREEMENT, AND KNOWS AND UNDERSTANDS ITS CONTENTS, AND VOLUNTARILY SIGNS IT OF HER OWN FREE WILL.

IN WITNESS WHEREOF, the parties sign this Agreement on the dates indicated below with the intent to be bound by its terms and conditions.

BOARD OF TRUSTEES OF THE UNIVERSITY OF FLORIDA

_____
SHERRIE RUSSELL-BROWN

By: _____

Date: _November 30, 2007_

Date: _December 11, 2007_

(Please initial)
Russell-Brown _____
Board Representative _____

APPENDIX 1

Dear Mr. Cavanaugh:

I hereby submit my voluntary and irrevocable resignation from the University of Florida effective December 31, 2007. Please make the appropriate notation in your files.

_Sherrie Russell-Brown_
Sherrie Russell-Brown

_November 30, 2007_
Date

(Please initial)
Russell-Brown _SRB_
Board Representative