IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHERRIE RUSSELL-BROWN,

    Plaintiff,

v.                                                           CASE NO. 1:09-cv-00257-MP -AK

ROBERT H JERRY, II, LEVIN COLLEGE OF LAW, THE UNIVERSITY OF FLORIDA, THE UNIVERSITY OF FLORIDA BOARD OF TRUSTEES,

    Defendants.

_____/

**O R D E R**

This matter is before the Court on Doc. 129, Motion for Voluntary Dismissal Without Prejudice, filed by Sherrie Russell-Brown. Defendants responded to the motion, Doc. 130, objecting to the dismissal being without prejudice and without other terms and conditions. A hearing was held on the motion to voluntarily dismiss on August 17, 2010, which counsel for the Defendants attended in person and which the Plaintiff's counsel, Lennox Hinds, was allowed to participate in telephonically.

Because the decision of whether to allow a voluntary dismissal without prejudice requires the Court to consider the history of the case and the potential unfairness to Defendants of a dismissal at this late hour, the Court must recount the long litigation history between these parties. Plaintiff first filed claims in federal court relating to her employment at The University of Florida College of Law ("The Law School") on February 5, 2009, through a complaint filed in <u>Russell-Brown v. the University of Florida Board of Trustees, *et al*</u>, 1:09-cv-00023-MP-AK, in the Northern District of Florida. The complaint contained the following description of the action in paragraphs 1 and 2, entitled "Nature of the Claims":

> This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices and other unlawful conduct, including their unlawful discrimination, harassment and retaliation against Ms. Russell-Brown and her constructive discharge, due to her Race and/or Color (African-American/Black), Sex (Female) and repeated complaints in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), Title VI of the Civil Rights Act of 1964, 42 U.S.C.§§ 2000d *et seq.* ("Title VI"), and the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983.
>
> Ms. Russell-Brown also brings state law claims of breach of contract, defamation, and intentional infliction of emotional distress.

Doc. 1. pp. 1-2.

On February 16, 2009, Plaintiff's counsel notified her in writing that they intended to withdraw due to irreconcilable differences. Plaintiff hired John Beranbaum, Esq., to represent her in place of her former counsel. On March 5, 2009, her prior counsel, Darren Cohen, Esq. and John C. Davis, Esq. moved formally to withdraw from the case, 1:09-cv-23 Doc. 6, and that motion was granted, 1:09-cv-23 Doc. 12.

Two months later, on May 22, 2009, while the above case was still pending, Plaintiff filed a virtually identical action in the District Court of New Jersey also covering her employment at UF Law. <u>Russell-Brown v. the University of Florida Board of Trustees, *et al*</u>, 2:09-cv-02479-SRC-MAS. In the Complaint in that case, the "Nature of Claims" section stated:

> This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices and other unlawful conduct, including their unlawful discrimination and harassment against Ms. Russell-Brown, due to her Race and/or Color (African-American/Black), Sex (Female) and their unlawful retaliation for opposition to discriminatory employment practices. Defendants' actions violated the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C.§§ 2000e *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX), Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* ("Title VI"), the First

> and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. §§ 1983, and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA").
>
> Ms. Russell-Brown also brings state law claims of breach of contract, defamation, and intentional infliction of emotional distress.

Doc. 1 in 2:09-cv-02479-SRC-MAS, ¶¶1-2. As the above paragraphs indicate, and a review of the full complaint confirms, this first New Jersey action was based on and included all of the claims from the first Florida complaint and added one new claim, under the FMLA.

Five days later, the Plaintiff served a notice of voluntarily dismissal of the first Florida case (1:09-cv-00023). Doc. 16. The notice did not mention the New Jersey case. The Court entered an order accepting the voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i) because the defendants had not yet responded. The order, which closed the first Florida case, was Doc. 17 and entered May 29, 2009.

Because the Plaintiff had filed the New Jersey case five days before voluntarily dismissing the Florida case, she escaped the possible application of Fed. R. Civ. 41(d). That Rule provides:

> (d) Costs of a Previously Dismissed Action.
>
> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
>
>> (1) may order the plaintiff to pay all or part of the costs of that previous action; and
>>
>> (2) may stay the proceedings until the plaintiff has complied.

Under this Rule, if the Plaintiff had voluntarily dismissed the Florida case before filing the New Jersey case -- which obviously was "based on or including the same claim against the same defendant" -- the New Jersey court could have applied Rule 41(d) to require payment of the costs

in the first Florida case, and could have stayed the New Jersey case until Plaintiff did so. However, Plaintiff avoided this possibility by filing the New Jersey case without first dismissing the Florida one.

Eventually, after seven months of litigation in New Jersey and multiple grants of extensions of time or resetting of court hearings to accommodate Plaintiff[1], the Court in the New Jersey case determined that the case should not have brought in the District Court of New Jersey in the first place, and transferred the case to the Northern District of Florida. The Court opined:

> Defendants are correct that the Complaint alleges no facts that would support laying venue in the District of New Jersey under any of the criteria specified by the statute. The unlawful employment practices of which Plaintiff complains were allegedly committed in Florida. The Complaint does not allege that the unlawful employment practices were committed anyplace but Florida. Plaintiff does not allege that the Law School maintained or administered its employment records in New Jersey, nor that the job required her to work in New Jersey, such that the judicial district in which she would have worked but for the alleged unlawful employment practice was in New Jersey. But for the alleged unlawful employment practices, it appears that Plaintiff would have taught law school in Florida.

Doc. 28, Opinion and Order, in 2:09-cv-02479-SRC-MAS (D.NJ). With regard to the burden on the Defendants of prosecuting in New Jersey, the Court stated,

> In the instant case, Plaintiff does not allege that the Law School is a national company. Nor does Plaintiff allege that her trips to New Jersey were beneficial to her employment. Unlike national sales or service companies, which may benefit from having employees in home offices spread across the nation, schools tend to get little benefit from having teaching staff far from the students. The Ninth Circuit was concerned about the fairness of a national company's employing workers in home offices in distant places but then forcing employees to litigate far from home. Here, the equities weigh differently: it seems unfair for the employee of a company that is not national, and which has not been alleged to have benefitted from Plaintiff's maintaining a distant home office, to force the company to litigate on the other side of the country. The Passantino Court's fairness concerns are not present in the instant case. Rather, a balancing of the

---

[1] See docs. 11, 12, 13, 14, 22 and 23 in 2:09-cv-02479-SRC-MAS (D.NJ).

equities tips toward the other side.

Id.

After the case was transferred to Northern District of Florida, it was given the case style Russell-Brown v. The University of Florida Board of Trustees, et al, 1:09-cv-00257-MP -AK. The first amended complaint in the case, Doc. 45, is the current charging document. The "Nature of Claims" section in that document reveals, and a review of the full complaint confirms, that the instant case is based on or includes all the claims raised in the first Florida case, 1:09-cv-23, which the Plaintiff had previously voluntarily dismissed (Doc. 16 in 1:09-cv-23) except to add a claim under the Family Medical Leave Act. Here is the "Nature of Claims" section from the First Amended Complaint:

> This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices and other unlawful conduct, including their unlawful discrimination and harassment against Ms. Russell-Brown, due to her Race andlor Color (African-American/BIack), Sex (Female) and their unlawful retaliation for opposition to discriminatory employment practices. Defendants' actions violated the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C.§§ 1681 *et seq.* ("Title IX), Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* ("Title VI"), the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983, and the Family and Medical Leave Act of 1993,29 U.S.C. *$5* 2601 *et seq.* ("FMLA").
>
> Ms. Russell-Brown also brings state law claims of breach of contract, defamation, and intentional infliction of emotional distress.

Doc. 45 in 1:09-cv-00257, pp. 1-2.

The course of the litigation in 1:09-cv-00257 has been anything but smooth, due mainly to the switching of counsel by Plaintiff, periods of unavailability of Plaintiff's current counsel, frequent motions to extend time or cancel hearings filed by Plaintiff, and a series of motions filed

by Plaintiff that Defendants were required to respond to and which were later found to be without merit by the Court. For example, on the same day that the order transferring the case to Florida was entered, December 17, 2009, attorney John Beranbaum notified Plaintiff in writing that he intended to withdraw as Plaintiff's counsel. His December 21, 2009, Motion to Withdraw, Doc. 30, noted that Plaintiff had failed to pay attorney's fees and that she and counsel had irreconcilable differences. A telephonic hearing was set on the motion to withdraw.

On January 8, 2010, Plaintiff moved to continue the telephonic hearing set to discuss Mr. Beranbaum's Motion to Withdraw, noting that she had hired Lennox Hinds, Esq. as her new attorney, but that Mr. Hinds would be "out of the country for much of January and February 2010. In particular, he has two large cases before the International Criminal Tribunal for Rwanda." Doc. 32. On January 19, 2010, this Court granted Mr. Beranbaum's request to withdraw upon written notice from Mr. Hinds that he would file a Notice of Appearance upon his return from Africa.

On March 23, 2010, Plaintiff filed her First Amended Complaint against Defendants, described above. Docs. 44-45. In response, Defendants promptly filed simultaneously an Answer to that Amended Complaint, Doc. 51, and a motion to renew the original Motion to Dismiss or for other relief, Doc. 52. The Court set a hearing on that dispositive motion for May 11, 2010. As that date approached, the Plaintiff filed a Motion to Continue along with a Motion for Entry of Default on April 30, 2010.

Plaintiff's Motion for Entry of Default was predicated on the argument that, since the First Amended Complaint was verified, any response to that Amended Complaint must also be verified, or would be considered a legal nullity. As this Court recited in its order denying the Motion for Entry of Default, Doc. 62, Defendants sent a letter to Plainitff on April 29, 2010,

after Plaintiff had notified Defendants of the motion but before filing it, asking for Plaintiff to provide any legal authority in support of her position that their responsive pleadings were a "nullity" if not "verified." Doc. 61, Ex. 1. The letter pointed out that Fed. R. Civ. P. 11(a) seemed to contradict this argument and that Defendants counsel was not aware of any legal authority supporting the argument. Instead of responding with any authority in support of her position, Plaintiff filed the Motion for Entry of Default, Doc. 58, which did not include a single legal citation in support of that proposition. Accordingly, this Court denied Plaintiff's requested relief, and required Mr. Hinds to show cause why he should not be sanctioned for the motion seeking default. The Court then rescheduled the dispositive motion hearing for May 21, 2010.

In his response to the order to show cause, Doc. 72, Mr. Hinds revealed that his verification proposition was supported by a single reference in the treatise *Corpus Juris Secundum* at 71 C.J.S. Pleading § 490. A review of the five cases cited by that section reveals that each applied a specific provision of state law which required verification, from Illinois, North Carolina and Colorado. In fact, the only Eleventh Circuit opinion to consider the issue, Kirkland v. Guardian Life Ins. Co. of America, 352 Fed.Appx. 293 (11th Cir. 2009), expressly held contrary to Mr. Hinds' position:

> Next, Kirkland argues that, because he verified his complaint, Guardian was required, under Georgia law, to verify its answer.
> Whether federal or state law applies in a diversity action is a question of law, which we review de novo. Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1306 (11th Cir.2002).
> In a diversity action, the federal court must apply state substantive law and federal procedural law. Id. In deciding whether state or federal law should apply to an issue, the court first looks to see whether the state and federal law conflict as to the disputed issue. Id. at 1306-07. Here, the state and federal laws conflict. Compare O.C.G.A. § 9-10-111, with Fed.R.Civ.P. 11(a). If the laws conflict, the court should determine "whether a congressional statute or Federal Rule of Civil Procedure covers the disputed issue." Esfeld, 289 F.3d at 1307. Here Rule 11(a), Fed.R.Civ.P., covers the disputed issue. Thus, the district court correctly found

>that federal law governed, see Esfeld, 289 F.3d at 1307, and Guardian was not required to verify its answer.

Mr. Hinds did not explain why he failed to include any citation to the C.J.S. entry when filing his motion for default, why he did not discuss any Eleventh Circuit or even any federal case law at all, and particularly why he did not follow the Eleventh Circuit in Kirkland. Nevertheless, giving Plaintiff the benefit of the doubt, the Court eventually discharged the Rule to Show Cause. Doc. 74.

On May 18, 2010, three days before the scheduled dispositive motion hearing, Plaintiff moved for another extension, to which Defendants held their objection in return for more time to answer interrogatories. The Court thus rescheduled the dispositive motion hearing once again, this time to June 10, 2010. On June 7, 2010, three days before this scheduled hearing, Plaintiff filed a motion for recusal and a motion to stay this litigation. Defendants arrived to the scheduled hearing having researched the recusal issues, though they had not had the time to file a full response to the motion for recusal. Because of the motion for recusal, the long-pending dispositive motion again could not be argued at the June 10, 2010, hearing.

After hearing Plaintiff on the motion for recusal, the Court denied the motion, finding, inter alia, that Plaintiff's affidavit was not legally sufficient because it revealed on its face that it was not based on personal knowledge but instead on mere speculation. Doc. 94. After so ruling, the Court reset the dispositive motion hearing a third time, for July 22, 2010.

On July 15, 2010, one week before the scheduled dispositive motion hearing, Plaintiff filed a flurry of motions, Docs. 97 and 98, a Motion to amend the First Amended Complaint; Doc. 96, a motion to reconsider the order denying recusal; and Doc. 101, a motion for a

scheduling conference.[2] On July 21, on the eve of the scheduled hearing, Plaintiff filed two different "emergency" motions, Doc. 106, an emergency motion to continue the dispositive motion hearing, and Doc. 107, a motion to strike the Defendants' pending dispositive motion for an alleged procedural defect, requiring the Court to cancel the pending dispositive motion hearing once again, to give Defendants time to address the new filings. Plaintiff then filed a Notice of Unavailability on July 22, 2010, noting the several dates for which Mr. Hinds would be unavailable due to international travel. Defendants promptly responded on July 28, 2010 to the Motion to Amend, Doc. 113.

Eventually, on August 4, 2010, the Court set all of the pending motions, including the dispositive motions, for hearing on August 17, 2010. The very next day, August 5, 2010, the Plaintiff filed another action in the District Court of New Jersey also based on or including claims relating to her employment at The Law School. The New Jersey case was given the case style, <u>Russell-Brown v. The University of Florida Board of Trustees, et al.</u>, 2:10-cv-04017-SDW-MCA, and was initiated by a Complaint at Doc. 1 which contained the following in the "Nature of the Claims" section:

> This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful conduct, including their unlawful retaliation for Ms. Russell-Brown having engaged in and continuing to engage in protected activity. Defendants' actions violated the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* ("Title VI"), and the First, Fifth and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983.
>
> Ms. Russell-Brown also brings state law claims of civil conspiracy and defamation.

---

[2] Plaintiff also filed a Motion to Strike several attorney time records of the Defendants, Doc. 91, but that motion did not disrupt the scheduled dispositive motion hearing.

Although this complaint adds Oxford University as a defendant, adds a conspiracy claim, and deletes some claims, the complaint is still based on and includes the claims in the previous action filed and voluntarily dismissed in Florida (1:09-cv-00023), and is based on and includes the claims brought in the previously filed New Jersey case (2:09-cv-02479-SRC-MAS) which was transferred to this court and became 1:09-cv-000257. On August 6, 2010, the day after the filing of the New Jersey case, Plaintiff filed Doc. 126 in the Florida case, 1:09-cv-00257, a Notice of Voluntary Withdrawal of her previous motion to amend the First Amended Complaint.[3]

What happened next is remarkably similar to what happened in the previous Florida action, 1:09-cv-00023. Eight days after filing the complaint in New Jersey, and with one business day remaining before an all-pending-motions hearing before the undersigned, the Plaintiff moved to voluntarily dismiss the Florida case without prejudice.[4] Doc. 129. As with Plaintiff's Notice of Voluntary Dismissal in the first Florida case (Doc. 16 in 1:09-cv-00023), the Motion to Voluntarily Dismiss Without Prejudice in the instant case did not mention the filing of the New Jersey case filed a few days earlier. A hearing was held on the motion to voluntarily dismiss on August 17, 2010, at which the Plaintiff's counsel, Lennox Hinds, was allowed to participate telephonically.

The Court is now faced with two issues: First, should the Court allow the Plaintiff to

---

[3] Even though the currently-active Complaint in this case, Docs. 44-45, is entitled "First Amended Complaint," the proposed amendment to that Complaint, Doc. 97, was also entitled "First Amended Complaint" by the Plaintiff.

[4] According to the Notice of Electronic Filing attached to Doc. 129, the "transaction was entered by HINDS, LENNOX on 8/13/2010 at 4:36 PM CDT and filed on 8/13/2010." Receipt available at https://ecf.flnd.circ11.dcn/cgi-bin/DisplayReceipt.pl?56567,660. CDT indicates Central Daylight Time, meaning that the document was filed at 5:36 p.m. Eastern time on Friday, August 13, 2010, leaving Monday, August 16, 2010, as the only business day before the hearing.

voluntarily dismiss the instant case, 1:09-cv-00257, without prejudice? Second, if the Court allows the dismissal without prejudice, what are the "terms [of dismissal without prejudice] that the court considers proper" pursuant to Fed. R. Civ. P. 41(a)(2)?

When a party moves to voluntarily dismiss a case in which the opposing party has served either an answer or a motion for summary judgment, the "action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41. The Defendants in the instant case, at Doc. 7, have filed an answer. Thus, the Court must decide whether to agree to the voluntary dismissal and must determine the terms that it considers proper. Ortega Trujillo v. Banco Central Del Ecuador, 379 F.3d 1298, 1301 (11th Cir. 2004) ("The district court grants a 41(a)(2) dismissal only in its discretion, and the 'authority to attach conditions to the order of dismissal prevents defendants from being unfairly affected thereby.'") citing Yoffe v. Keller Ind., Inc., 580 F.2d 126, 129 (5th Cir.1978) (internal quotes omitted).

The Court's authority to set the terms of dismissal without prejudice thus comes from Fed. R. Civ. P. 41(a)(2) itself and not from the separate authority found in Fed. R. Civ. P. 41(d) to impose the costs when a previously voluntarily dismissed action is refiled by the Plaintiff. During the telephonic hearing, Plaintiff's counsel repeatedly asserted that the Court's discretion to impose costs was dependent upon the Plaintiff refiling the same case in the same venue. This argument is wrong in three ways. First, as noted above, Rule 41(a)(2) provides independent authority to the court to impose terms on a voluntary dismissal. Second, even if the Court were applying Rule 41(d), the express language of Rule 41(d) applies to a plaintiff who previously dismissed a case "in any court," not necessarily a case refiled in the same venue. Finally, Rule 41(d) applies to any refiled case "based on or including" the same claims previously voluntarily dismissed. Thus, the mere addition of a defendant or a new claim or two does not prevent the

application of Rule 41(d) so long as there are claims in the new case that arise from the same nucleus of operative facts such that the new case can be said to be "based on or including" previously brought and dismissed claims. In our case, however, plaintiff's incorrect interpretation of Rule 41(d) is of no import, the Court proceeds under the authority to impose terms of dismissal under Rule 41(a)(2) and not Rule 41(d).

A district court enjoys broad discretion in determining whether to allow a Rule 41(a)(2) voluntary dismissal. Pontenberg v. Boston Scientific Corp., 252 F.3d 1253, 1255 (11th Cir. 2001). When a district court exercises its discretion under Rule 41(a)(2), the court "must 'weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate.'" *Id*. at 1256 (quoting McCants v. Ford Motor Co., 781 F.2d 855, 857 (11th Cir. 1986)). In addition, in exercising its discretion a "court should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants." Fisher v. P.R. Marine Mgmt., Inc., 940 F.2d 1502, 1503 (11th Cir. 1991). In dismissing a case under Rule 41(a)(2), a court may assess costs and fees associated with the action. Ortega Trujillo v. Banco Central Del Ecuador, 379 F.3d 1298, 1301 (11th Cir. 2004).

In examining the equities related to this litigation thus far, it is clear that significant conditions would be required for any dismissal without prejudice to protect the Defendants from the unfairness of duplicative and vexatious litigation. Here, the Plaintiff has twice filed cases in New Jersey based on and including claims in then-pending Florida cases. Additionally, in each instance, the Plaintiff did not inform the Florida court of the filing of the New Jersey cases when the Plaintiff shortly thereafter moved to voluntarily dismiss the Florida actions. Third, this case and the other related cases show a clear history of Plaintiff vexatiously delaying this Court's

adjudication of the dispositive issues in this case by interposing meritless motions on the eve of scheduled dispositive motion hearings.  Most recently, Plaintiff filed yet another case in New Jersey, even though that district has already expressly held that venue there is not proper, and that litigating in New Jersey was an inequitable burden to the Defendants.  Worse yet, Plaintiff filed the motion to voluntarily dismiss in Florida without mentioning the filing of the New Jersey case, and on the eve of an all-pending-motions hearing in the Florida case.  This is exactly the type of vexatious conduct and impermissible forum-shopping that Rule 41(a)(2) is intended to deter.  As our sister court stated in similar circumstances,

> The purpose of awarding costs under Rule 41(a)(2) is twofold: to fully compensate the defendant for reasonable expenses incurred before dismissal and to deter vexatious litigation. See 5 J. Moore, J. Lucas, J. Wicker, Moore's Federal Practice §§ 41.05[1], 41.06 (2d ed. 1982). The award of costs usually includes all litigation-related expenses incurred by the defendant, including reasonable attorney fees.

Bishop v. West American Ins. Co., 95 F.R.D. 494 (D.C.Ga.,1982).  Defendants have worked towards swift adjudication of this case on the merits at every turn, in two different forums, and under four different case numbers.  As described above, Plaintiff has gone to great lengths to avoid such an adjudication on the merits.

Thus, as stated at the conclusion of the hearing on August 17, 2010, this Court finds that the voluntary dismissal is granted, but only under the terms that the Plaintiff reimburse the Defendants the reasonable costs and attorney's fees incurred in this case after this matter was transferred to the Northern District of Florida.  Additionally, the Plaintiff must also reimburse Defendants for the costs and attorney's fees, if any, incurred in the previously dismissed Florida case, 1:09-cv-00023.  These terms are necessary and proper to protect the Defendants "from the unfairness of duplicative litigation" while allowing a dismissal without prejudice at this late

stage of the litigation. Versa Products, Inc. v. Home Depot, USA, Inc., 387 F.3d 1325, 1328 (11th Cir. 2004). The Court retains jurisdiction to ensure that the matter of fees and costs are fully resolved. Further, as per Fed. R. Civ. P. 41(a)(2), Defendants' Counterclaim will remain active, and Plaintiff will be compelled to answer it. Accordingly, it is

ORDERED AND ADJUDGED:

1. The motion for voluntary dismissal of this action, Doc. 129, is granted, conditioned upon the payment of all costs and attorney's fees to Defendants for the litigation of the original case (1:09-cv-23), and of this case (1:09-cv-257) since it was removed to this Court.

2. Defendants and Plaintiff shall review and follow the procedures in N.D. Fla. Local Rule 54.1, with regard to attorney's fees in 1:09-cv-257 and 1:09-cv-23. Since the Court has decided the issue of liability for fees in this Order, the provisions of Local Rule 54.1 (E) and (F) will hereafter control. (See N.D.Fla. Local R. 54.1(D)).

3. Plaintiff will file an Answer, no later than close of business September 17, 2010, to Defendants' Counterclaim.

**DONE AND ORDERED** this __19th__ day of August, 2010

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge